**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mike YOUNGPETER, Defendant–Appellant.**

Nos. 91–5193, 92–5124.

United States Court of Appeals, Tenth Circuit.

Feb. 16, 1993.

John S. Morgan, Asst. U.S. Atty. (Tony M. Graham, U.S. Atty., with him on the briefs), Tulsa, OK, for plaintiff-appellee.

C.W. Hack of Flowers, Harman, Hack & Finlayson, P.A., Tulsa, OK, for defendant-appellant.

Before ANDERSON and BRORBY, Circuit Judges, and BRATTON,* Senior District Judge.

* The Honorable Howard C. Bratton, Senior United States District Court Judge for the District of New Mexico, sitting by designation.

BRORBY, Circuit Judge.

Mr. Youngpeter[1] was convicted of a drug conspiracy[2] and appeals asserting insufficiency of the evidence, erroneous denial of his motion to sever his trial from that of the co-defendants and sentencing error. Mr. Youngpeter also appeals the denial of his motion for new trial. We consolidated Mr. Youngpeter's appeals and affirm.

A synopsis of the prosecution's evidence reveals a conspiracy to manufacture, possess and sell methamphetamine. The many people involved were led by Johnny Glover who supplied the capital, equipment, chemicals, manufacturing locations, vehicles, and leadership. Mr. Youngpeter's part was that of a seller of the illegally made drugs.

I

Sufficiency of the Evidence

In a drug conspiracy case, the evidence must show the following: (1) two or more persons agreed to violate federal narcotics laws; (2) the defendant knew the essential objectives of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of the conspiracy. *United States v. Russell*, 963 F.2d 1320, 1322 (10th Cir.) (citing *United States v. Savaiano*, 843 F.2d 1280, 1294 (10th Cir.1988)), *cert. denied*, —— U.S. ——, 113 S.Ct. 280, 121 L.Ed.2d 207 (1992). Mr. Youngpeter asserts the evidence was insufficient to prove he distributed methamphetamine. Mr. Youngpeter concedes he knowingly purchased illicit drugs from the conspiracy, but argues that the evidence only shows he was a drug user and fails to show he was a drug distributor. Thus, the issue is simply whether the evidence is sufficient to enable a jury to find beyond a reasonable doubt that Mr. Youngpeter was distributing drugs for the conspiracy. Stated somewhat differently, the question is: Was Mr. Youngpeter a distributor of the illegal drugs or was he a merely a consumer?

Examining the trial record, we find sufficient evidence that would enable a jury to find, beyond a reasonable doubt, that Mr. Youngpeter was a distributor and seller of the illegal drugs. Mr. Johnny Glover, the leader of the drug conspiracy, testified: (1) he sold a total of approximately one and one-half pounds of methamphetamine to Mr. Youngpeter on more than eight separate occasions; and (2) Mr. Youngpeter told him that he was selling the purchased drugs. Kerrie Webster testified she purchased methamphetamine from Mr. Youngpeter on several occasions. Mr. Thomas, a methamphetamine cook for the conspiracy, testified he sold methamphetamine to Mr. Youngpeter in five, ten and twenty pound lots and the conspiracy even "fronted" the drugs to Mr. Youngpeter, which by Mr. Thomas's definition meant that Mr. Youngpeter had to wholesale it to other sellers to obtain the money to pay back the purchase price. Another witness, Ruby Jackson, testified that on the orders of Johnny Glover, she delivered a paper sack to Mr. Youngpeter that was half full of twenty and one hundred dollar bills and Mr. Youngpeter thanked her.

Mr. Youngpeter argues that the evidence obtained from Johnny Glover's testimony, as recited above, was "highly attenuated"; that Kerrie Webster could have been confused; and that Mr. Thomas's testimony was unreliable. These arguments were properly directed to the jury. The jury was not persuaded by these arguments and accepted the testimony of these individuals as above summarized. An appellate court may not decide the credibility of witnesses as that is the exclusive task of the fact trier. The record also reveals conflicting testimony presented by the defense; but, once again, it is for the jury to decide which witnesses to believe and

---

**1.** Mr. Youngpeter was jointly tried with three co-defendants who also appeal. For these companion cases, *see United States v. Reynolds*, No. 92–5000, 986 F.2d 1431 (Feb. 18, 1993); *United States v. Glover*, No. 92–5001, 986 F.2d 1430 (Feb. 18, 1993); and *United States v. Barnes*, No. 92–5002, 986 F.2d 1430 (Feb. 18, 1993).

**2.** The drug conspiracy charge involves three statutes: 21 U.S.C. § 846 (conspiracy to commit defined offense); 21 U.S.C. § 841(a)(1) (unlawful to manufacture, distribute, or dispense controlled substance); and 21 U.S.C. § 841(b)(1)(A)(viii) (providing the penalty).

which not. Once the jury has spoken, this court may not reweigh the credibility of the witnesses. Our task is to view the evidence presented in a light most favorable to the government and to give the government the benefit of all favorable inferences that may be drawn from this testimony. *United States v. Cox*, 929 F.2d 1511, 1514 (10th Cir.1991). This we have done, and in so doing have concluded the evidence was sufficient to conclude beyond a reasonable doubt that Mr. Youngpeter was guilty as charged.

## II

### Denial of the Severance

Four defendants, including Mr. Youngpeter, were jointly charged and tried on a single count—the drug conspiracy charge. Mr. Youngpeter filed a motion for a separate trial, which was denied. Mr. Youngpeter now asserts this was error arguing the three co-defendants "were much more culpable than he."

■■■ Separate trials are not a matter of right where two or more defendants allegedly participated in the same act or transaction or the same series of acts or transactions that constituted a criminal offense. *United States v. Davis*, 436 F.2d 679, 681 (10th Cir.1971). A severance should be granted by the district court "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, —— U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). In order to obtain a separate trial, the defendant must make a strong showing of prejudice. *United States v. Evans*, 970 F.2d 663, 675 (10th Cir.1992), *petition for cert. filed* Oct. 9, 1992, S.Ct. No. 92–6186; *United States v. Bailey*, 952 F.2d 363, 365 (10th Cir.1991) (citing *United States v. Cardall*, 885 F.2d 656, 667–68 (10th Cir.1989)). This burden is heavy for the defendant to bear as he must show more than a better chance of acquittal or a hypothesis of prejudice, *Bailey*, 952 F.2d at 369, he must, in fact, show real prejudice. *United States v. Jones*, 707

F.2d 1169, 1171 (10th Cir.), *cert. denied*, 464 U.S. 859, 104 S.Ct. 184, 78 L.Ed.2d 163 (1983). Any potential prejudice suffered by Mr. Youngpeter must be weighed " 'against the important considerations of economy and expedition in judicial administration' ..., considerations [that] are quite strong when the codefendants allegedly conspired with each other." *United States v. Mayes*, 917 F.2d 457, 460–61 (10th Cir. 1990) (quoting *United States v. Esch*, 832 F.2d 531, 537 (10th Cir.1987), *cert. denied*, 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 242 and 485 U.S. 991, 108 S.Ct. 1299, 99 L.Ed.2d 509 (1988)), *cert. denied*, 485 U.S. 991, 111 S.Ct. 1087, 112 L.Ed.2d 1192 (1991). As a severance is a matter of discretion and not right, we review the trial court's decision denying a severance under an abuse of discretion standard. *Evans*, 970 F.2d at 675.

■■■ The mere fact that one co-defendant is less culpable than the remaining co-defendants is not alone sufficient grounds to establish a trial court abused its discretion in denying a severance. It would be normal and usual to assume one of two or more co-defendants would be more or less culpable than the others. The joint trial did not "compromise a specific trial right" of Mr. Youngpeter and did not "prevent the jury from making a reliable judgment [as to Mr. Youngpeter's] guilt or innocence." *Zafiro*, —— U.S. ——, 113 S.Ct. 933, 122 L.Ed.2d 317. Mr. Youngpeter failed to meet his burden of showing real prejudice, and the trial court did not abuse its discretion in denying Mr. Youngpeter's motion for a severance.

## III

### Sentencing Errors

#### A. Miscalculation of Base Offense Level

Mr. Youngpeter asserts the trial court miscalculated the base offense level when it computed the chargeable quantity of methamphetamine. Mr. Youngpeter argues that he should only be chargeable with the 1.5 pounds Mr. Glover testified he sold to Mr. Youngpeter rather than the

26.5 pounds found by the trial court. This difference would reduce the base offense level from 36 to 28.

The trial court arrived at the quantity of 26.5 pounds by accepting the testimony of Johnny Glover (who testified that he sold Mr. Youngpeter 1.5 pounds); adding six pounds of methamphetamine Mr. Glover attempted to produce in October or November of 1984 (due to ineptness this "cook" only produced one pound); and adding eighteen gallons of methamphetamine oil which would have "powdered out" to eighteen pounds of methamphetamine.

Mr. Youngpeter first asserts that as there was absolutely no evidence he was ever involved in methamphetamine manufacturing, he cannot be held accountable therefor.

 United States Sentencing Guideline § 2D1.4 provides that if the defendant is convicted of a conspiracy, as Mr. Youngpeter was, the offense level shall be the same "as if the object of the conspiracy ... had been completed." The evidence clearly establishes Mr. Youngpeter knew that one of the objectives of the conspiracy was to manufacture methamphetamine. The fact that Mr. Youngpeter was only involved in distribution is irrelevant to his sentencing. The trial court could and should consider the entire quantity of drugs manufactured as these are within the scope of the conspiracy so long as this quantity was "reasonably foreseeable" in conjunction with Mr. Youngpeter's agreement to be a distributor of the illegally produced drugs. *See* U.S.S.G. § 1B1.3, comment. (n.1). As a member of an ongoing conspiracy, the defendant is subject to a sentence calculated on a base offense level established by reference to the quantity of drugs involved in the offense if the defendant "knew or should have known that at least such amount was involved." *United States v. Williams,* 897 F.2d 1034, 1041 (10th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991).

 Mr. Youngpeter argues that the "cook" that attempted to produce six pounds of methamphetamine produced only one pound due to inept cooking ability. Therefore, he asserts he should be accountable only for the one pound actually produced. This argument must be rejected in accordance with U.S.S.G. § 2D1.4, which states the offense level shall be the same "as if the object of the conspiracy ... had been completed."

 Mr. Youngpeter also attacks the conversion factor of eighteen gallons of methamphetamine oil into eighteen pounds of methamphetamine. He argues no expert testimony was considered and the ability of the cooker was ignored. Mr. Youngpeter failed to make these objections in response to the presentence report. We do not review a factual matter that is raised for the first time on appeal.

**B. Was Defendant Entitled to be Classified as Either a Minimal or Minor Participant?**

The presentence report categorized Mr. Youngpeter as a "mid-level dealer." Mr. Youngpeter takes exception to this categorization and asserts he should be given either a four-point or two-point reduction in his base offense level as described in U.S.S.G. § 3B1.2(a), (b) as he was only a "minimal participant" or at most a "minor participant." Specifically, Mr. Youngpeter argues he was "mostly a user of methamphetamine, and at the very most, a street level dealer." Mr. Youngpeter equates this factual scenario to a classification as either a minimal or minor participant. The commentary (n.1) to U.S.S.G. § 3B1.2 instructs us that one of the factors to be considered is "defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others."

 The determination of whether a defendant was a minimal or minor participant is heavily dependent upon the facts of each case and, as such, we review the district court's finding under the clearly erroneous standard. *United States v. Uresti–Hernandez,* 968 F.2d 1042, 1047 (10th Cir. 1992); *United States v. Havens,* 910 F.2d 703, 706 (10th Cir.1990), *cert. denied,* 498 U.S. 1030, 111 S.Ct. 687, 112 L.Ed.2d 678

(1991). The quantum of proof required for this factual determination is a preponderance of the evidence and the burden of proof for a sentence decrease belongs to the defendant. *Havens,* 910 F.2d at 706.

We quote from the presentence report as follows:

Tim Vestal testified that Johnny Glover had told him that Youngpeter was one of his sellers, not buyers of methamphetamine. Secondly, Johnny Glover testified that he originally met Mike Youngpeter through Youngpeter's brother Steve, who also sold drugs for Glover. Thirdly, Carrie Webster testified that Youngpeter had sold her illegal drugs, and that she had witnessed George Semlar buying drugs from Youngpeter five to ten times and a couple of days apart in or about the summer of 1988. The Probation Office defines a mid-level drug dealer as one who buys from the manufacturer or producer and sells to a retailer or in this case, illegal drug users. A mid-level distributor describes Youngpeter because Youngpeter purchased the illegal drugs directly from the source, Johnny Glover. Whether mid-level or street-level dealer is used to describe Youngpeter's involvement, it does not dictate Youngpeter as a minimal or minor participant and has no bearing on the applied guideline calculations.

Mr. Youngpeter offered no evidence at sentencing and consequently these facts are determinative.

 Clearly there exists more than sufficient evidence to deny Mr. Youngpeter the classification he seeks. A drug dealer would not ordinarily be classified as either a minor or minimal participant. In the case before us there exists considerable evidence to establish that Mr. Youngpeter was knowledgeable and was an integral part of the conspiracy.

 Mr. Youngpeter responds by asserting "[t]he only trial testimony ... showed [Mr. Youngpeter] to be a person who distributes directly to users of the drug." Selling illegal drugs only to users does not necessarily warrant the sentencing classification of "minimal participant" or "minor participant." Since the district court's determination that Mr. Youngpeter was neither a minimal or a minor participant is not clearly erroneous, we uphold its decision.

**C. Request for Downward Departure**

 Mr. Youngpeter appeals the trial court's decision not to depart downward. "[W]e do not have jurisdiction to hear an appeal over the trial court's discretionary refusal to depart downward from the guidelines." *United States v. Davis,* 900 F.2d 1524, 1529–30 (10th Cir.), *cert. denied,* 498 U.S. 856, 111 S.Ct. 155, 112 L.Ed.2d 121 (1990).

**D. Disparity in Sentencing**

Mr. Youngpeter asserts that as he received the second most severe sentence of the four defendants, his sentence is "clearly too severe for someone of his level of involvement."

 Disparity of a codefendant's sentence comes within a request for proportionality review. The Eighth Amendment requires that a sentence not be disproportionate to the severity of the crime or involve unnecessary infliction of pain. *See Solem v. Helm,* 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983). Within this limitation, the determination of the proper penalty is a matter for the legislature. If the imposed sentence is within the statutory limits, as was Mr. Youngpeter's, an appellate court "generally will not regard it as cruel and unusual punishment." *United States v. Hughes,* 901 F.2d 830, 832 (10th Cir.) (citing *United States v. Gourley,* 835 F.2d 249, 252–53 (10th Cir. 1987), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988)), *cert. denied,* 498 U.S. 859, 111 S.Ct. 163, 112 L.Ed.2d 128 (1990). Mr. Youngpeter's sentence was not only within the statutory limits, it was also within the appropriate range as established by proper application of the Sentencing Guidelines. Clearly, Mr. Youngpeter's sentence is not disproportionate to this crime. *See Harmelin v. Michigan,* — U.S. —, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (ma-

jority held that imposition of life in prison without parole for possession of 650 grams of cocaine did not violate Eighth Amendment). When two or more defendants are convicted of the same crime a sentencing difference may be expected as the Sentencing Guidelines dictate a sentence based upon each defendant's conduct and criminal history. Sentencing differences due to individual conduct as considered by the Sentencing Guidelines do not make a sentence disproportionate.

## IV

### Denial of Motion for New Trial

Mr. Youngpeter sought a new trial pursuant to Fed.R.Crim.P. 33 on grounds that he discovered new evidence. Specifically, Mr. Youngpeter produced an affidavit from one George Semler who, if given the chance to testify, would refute the testimony of Kerrie Webster concerning purchases of methamphetamine from Mr. Youngpeter. The district court denied the motion finding the new evidence merely impeaching and cumulative. We affirm.

The governing law on this issue was clearly set forth in *United States v. Sutton,* 767 F.2d 726, 728 (10th Cir.1985), where this court stated:

> The alleged newly discovered evidence must be more than impeaching or cumulative; it must be material to the issues involved; it must be such that it would probably produce an acquittal; and a new trial is not warranted if the new evidence is such that, with reasonable diligence, it could have been discovered and produced at the original trial. *United States v. Allen,* 554 F.2d 398, 403 (10th Cir.), *cert. denied,* 434 U.S. 836 [98 S.Ct. 124, 54 L.Ed.2d 97] (1977). The motion is not regarded with favor and should be granted only with great caution, being addressed to the sound discretion of the trial court. *Id.* The decision of the trial court will not be disturbed unless there has been an abuse of such discretion.

*See also United States v. Stevens,* 978 F.2d 565, 570 (10th Cir.1992); *United States v. Kelley,* 929 F.2d 582, 586 (10th Cir.), *cert.*

*denied,* —— U.S. ——, 112 S.Ct. 341, 116 L.Ed.2d 280 (1991).

The evidence offered by Mr. Semler is impeaching. Mr. Semler explains that Kerrie Webster was confused and mistook Mr. Mike Youngpeter, the defendant, with his brother, Steve Youngpeter. At trial, such evidence would have been considered by the jury in weighing Kerrie Webster's testimony. In contrast, Kerrie Webster stated on cross-examination that it was not possible that she confused Mike and Steve Youngpeter. Clearly, the new evidence is merely impeaching. *See Kelley,* 929 F.2d at 586.

The evidence offered by Mr. Semler is also cumulative. Mr. Melvin Reynolds and Ms. Katherine Reynolds both testified at trial that Kerrie Webster's testimony was mistaken. In fact, Ms. Reynolds testified that she never saw Mr. Youngpeter at the shop where Kerrie Webster allegedly bought methamphetamine from him, but Ms. Reynolds did testify that Mr. Youngpeter's brother was often at the shop. Moreover, Mr. Youngpeter took the stand in his own defense and testified that he never sold methamphetamine to Kerrie Webster. Thus, testimony by George Semler refuting Kerrie Webster's testimony would have been cumulative.

Finally, the newly discovered evidence is not such that it would "probably produce an acquittal." In addition to the testimony of Kerrie Webster, which the new evidence impeaches, there was testimony by Johnny Glover that he sold methamphetamine to Mr. Youngpeter; Ralph Thomas testified that five-, ten- and twenty-pound lots of methamphetamine were delivered to Mr. Youngpeter; and Renee Moore and Ruby Jackson testified as to various drug-related transactions by Mr. Youngpeter. In view of the overwhelming evidence against Mr. Youngpeter, we do not find it probable that the newly discovered evidence would have produced an acquittal.

The judgment and sentence are AFFIRMED.