986 F.2d 1430
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Randy GLOVER, Defendant-Appellant.
 No. 92-5130.
 United States Court of Appeals, Tenth Circuit.
 Feb. 16, 1993.
 
 Before STEPHEN H. ANDERSON and BRORBY, Circuit Judges, and BRATTON,* District Judge.
 ORDER AND JUDGMENT**
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 Randy Glover was convicted upon a jury verdict of conspiring to manufacture, possess and distribute methamphetamine in violation of 21 U.S.C. § 846, 841(a)(1), 841(b)(1)(A)(viii). He was sentenced to a prison term of 292 months. On appeal, Glover argues that the court erred in denying his motion for a new trial on the ground that the government violated Fed.R.Evid. 611(c) by posing an excessive number of leading questions on direct examination. He further argues that the district court incorrectly applied the sentencing guidelines in sentencing him to 292 months in prison. In particular, Glover asserts that in calculating his base offense level, the district court committed clear error in attributing to him 119 pounds of methamphetamine. We exercise jurisdiction under 28 U.S.C. § 1291, and AFFIRM.
 
 FACTS
 
 2
 Testimony at trial revealed that Randy Glover was part of an ongoing methamphetamine operation conducted by several individuals, including at least two of his brothers. Johnny Glover, Randy's older brother, was the ringleader of the activities which, according to the indictment and subsequent testimony at trial, began in 1986. The Glover brothers and others set up clandestine laboratories and manufactured methamphetamine in several locations in Oklahoma and Kansas from 1986 through 1989. At trial, several witnesses testified that Randy Glover was personally involved in the manufacture and distribution of methamphetamine. Specifically, Ralph Thomas testified that he and Randy Glover had "cooked dope together many times." R. Vol. IV at 193. Thomas further testified that on July 15, 1989, he was arrested while driving a pickup truck containing one pound of methamphetamine and fifteen or more gallons of methamphetamine oil which "belong[ed] to Randy, Kelly and Johnny [Glover]." R. Vol. IV at 195. Johnny Glover, Randy's brother, testified that while he [Johnny] was in prison, he asked Randy "if he would go over and talk to this guy and see if he [Randy] could get him a hundred pounds of drugs." R. Vol. IV at 218. Randy Glover subsequently complied with his brother's request. He met with the individual at a motel and negotiated the delivery to that individual of "a minimum of a hundred pounds" of methamphetamine. R. Vol. IV at 244. The person with whom Randy Glover negotiated turned out to be DEA Agent Grady Lowrey. In addition to Agent Lowrey's testimony at trial, the tape-recorded conversation between Randy Glover and Agent Lowrey, along with a transcript of the tape, were introduced as evidence.
 
 
 3
 On May 20, 1992, the district court sentenced Glover to 292 months in prison with five years of supervised release thereafter. The amount of methamphetamine attributed to him in order to calculate his base offense level was 129 pounds, 2 5/8 ounces, including the 100 pounds he negotiated for delivery to Agent Lowrey, and 19 pounds of methamphetamine, a conservative estimate of the amount of drug that could have been derived from the 15 or more gallons of methamphetamine oil seized from the pickup truck driven by Ralph Thomas.
 
 DISCUSSION
 
 4
 Glover first contends that he was denied a fair trial by the government's alleged continual use of leading questions on direct examination. Glover's brief on appeal references "about 120 leading and suggestive questions to its witnesses on matters of substance...." Appellant's Principal Brief at 10. However, the record indicates that Glover objected to only five questions as leading, and that the court sustained four of those objections and overruled one. R. Vol. IV. In its order denying Glover's motion for a new trial, the district court found that the government's use of leading questions was, at most, harmless error inasmuch as "[t]he evidence at trial was overwhelming as to the defendant's guilt." R. Vol. I, Tab 178. We agree.
 
 
 5
 We review a district court's denial of a motion for a new trial for abuse of discretion. United States v. Kelley, 929 F.2d 582, 586 (10th Cir.), cert. denied, 112 S.Ct. 341 (1991). Fed.R.Evid. 611(c) states that "[l]eading questions should not be used on direct examination of a witness except as may be necessary to develop his testimony." While it is not clear that the government's leading questions were necessary to develop the testimony of its witnesses, Rule 611(c) vests broad discretion in trial courts, and "we will therefore reverse on the basis of improper leading questions only if 'the judge's action ... amounted to, or contributed to, the denial of a fair trial.' " Miller v. Fairchild Indus., 885 F.2d 498, 515 (9th Cir.1989) (quoting McCormick on Evidence, at 12 Cleary, ed. (1984)). Here, reversal is unwarranted because the leading questions were not unduly suggestive, and Glover had the opportunity to cross-examine the witnesses thoroughly.
 
 
 6
 Next, Glover objects to the district court's determination of the quantity of methamphetamine attributed to him for sentencing purposes. Under the sentencing guidelines, we "shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). A finding of fact is clearly erroneous only if "it has no support in the record or, after reviewing all the evidence, we are firmly convinced an error has been made." United States v. Bernaugh, 969 F.2d 858, 864 (10th Cir.1991), cert. denied, 61 U.S.L.W. 3479 (U.S. Jan. 11, 1993); see also United States v. Cook, 949 F.2d 289, 296 (10th Cir.1991).
 
 
 7
 U.S.S.G. § 2D1.4[1] provides that "[i]f a defendant is convicted of a conspiracy or an attempt to commit any offense involving a controlled substance, the offense level shall be the same as if the object of the conspiracy or attempt had been completed." Based on testimony at trial, the presentence report, and evidence presented during the sentencing hearing, the district court determined that the 100 pounds of methamphetamine Glover negotiated to deliver to Agent Lowrey, as well as the 19 pounds seized from the truck driven by Ralph Thomas should be included in calculating his base offense level. R. Vol. VI at 52-59.
 
 
 8
 With respect to the 100 pounds negotiated for delivery to Agent Lowrey, Glover points to Application Note One of § 2D1.4 of the Sentencing Guidelines which states that "where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing." U.S.S.G. § 2D1.4, comment. (n. 1). Glover contends that he had neither the intent nor the capability of producing 100 pounds of methamphetamine, that there is "not a scintilla of evidence that ... labs actually existed" or that Glover bought or had access to chemicals or did anything to implement the plan after his November 18, 1989, meeting with Agent Lowrey. Appellant's Principal Brief at 11-12.
 
 
 9
 A careful reading of the record convinces us that the district court's factual determination that Glover had both the intent and the capability of producing the 100 pounds of methamphetamine was not clearly erroneous. As the court noted during the sentencing hearing, Glover was part of "a long term organization clearly educated and experienced in the procurement of chemicals and the manufacture of methamphetamine." R. Vol. VI at 55. Several witnesses at trial testified about having been present while members of the conspiracy, including Glover, "cooked" or "powdered out" the drug. Thus, the record supports a finding that the 100 pounds attributed to Glover was "within the scope of, and reasonably foreseeable in connection with, the criminal activity he jointly agreed to undertake with his coconspirators." United States v. Reid, 911 F.2d 1456, 1462 (10th Cir.1990) (citing U.S.S.G. § 1B1.3, comment. (n. 1)), cert. denied, 111 S.Ct. 990 (1991).
 
 
 10
 Nor did the court err in attributing to Glover the 19 pounds of methamphetamine seized from the pickup truck driven by Ralph Thomas. At trial, Thomas testified that he "cooked" methamphetamine on two occasions with Glover in Kansas and that the lab equipment and methamphetamine oil were subsequently transported to Oklahoma. R. Vol. IV at 193-94. When questioned about the ownership of the seized methamphetamine, Thomas responded that "that stuff ... belong[ed] to Randy, Kelly, and Johnny. Should be over a million and a half dollars worth of stuff." Id. at 195. Glover asserts that Thomas' testimony, the only evidence linking Glover to the methamphetamine found in the truck, was unreliable because Thomas testified under a plea agreement. Appellant's Principal Brief at 12. After noting that excluding witnesses who have plea agreements "would pretty much stop trials for drug matters," R. Vol. VI at 58, the district court made the following factual finding at the sentencing hearing:
 
 
 11
 Mr. Thomas was not the most clear testifying witness, but from having observed Mr. Thomas, as [defense counsel] note[s], in the two different trials, it came through fairly clear to the court, and I think it did to the jury, as to what he was testifying to, his rather substantial involvement in the cooking phase of it, and who was with him and assisted him in doing those things, and who he saw around those places as participants, and I think it was very clear that Mr. Randy Glover was one of those who did that. Therefore, the court finds then that the evidence is substantial, that that particular amount Mr. Randy Glover was associated with ... should be included in the ... calculations.
 
 
 12
 R. Vol. VI at 58-59.
 
 
 13
 The record supports the district court's finding that the 19 pounds seized from the pickup truck driven by Ralph Thomas were chargeable to Glover. Recognizing that a minimal indicia of reliability must accompany evidence before it may be used in calculating a defendant's base offense level, Reid, 911 F.2d at 1464, we hold that the district court's reliance on Ralph Thomas' testimony, which was consistent with the testimony of others, was not clearly erroneous.
 
 
 14
 AFFIRMED.
 
 
 
 *
 The Honorable Howard C. Bratton, Senior Judge, United States District Court for the District of New Mexico, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Section 2D1.4 of the Sentencing Guidelines was "deleted by consolidation with the guidelines applicable to the underlying substantive offenses effective November 1, 1992." United States Sentencing Commission, Guidelines Manual, § 2D1.4 [deleted] (historical note) (Nov. 1992). However, because Glover was sentenced prior to the November 1992 amendments to the Sentencing Guidelines, our analysis proceeds under § 2D1.4. See United States v. Mondaine, 956 F.2d 939, 941 (10th Cir.1991) ("A defendant is ordinarily sentenced under the guidelines in effect on the date of sentencing.")