986 F.2d 1430
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
James BARNES, Defendant-Appellant.
 No. 92-5002.
 United States Court of Appeals, Tenth Circuit.
 Feb. 16, 1993.
 
 Before STEPHEN H. ANDERSON and BRORBY, Circuit Judges, and BRATTON,* Senior District Judge.
 ORDER AND JUDGMENT**
 BRORBY, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Mr. Barnes was convicted of being a member of a conspiracy to manufacture and distribute methamphetamine.[1] Mr. Barnes appeals asserting evidentiary and instructional errors, prosecutorial misconduct, ineffective assistance of counsel and cumulative error. We affirm.
 
 
 3
 The evidence reveals Mr. Barnes' principal role in the conspiracy was that of a distributor of the illegally manufactured methamphetamine.
 
 
 4
 * Rule 404(b) Evidence
 
 
 5
 Mr. Barnes asserts three Government witnesses gave Fed.R.Evid. 404(b) evidence and this evidence was not only improperly admitted but the trial court also failed to instruct concerning this evidence. The Government contends the evidence in question was not Rule 404(b) evidence.
 
 
 6
 As no objections were raised to the testimony, and as no request for instructions were made, we will review this contention under the plain error standard of review. Fed.R.Crim.P. 52(b); see United States v. Culpepper, 834 F.2d 879, 883 (10th Cir.1987).
 
 
 7
 Mr. Barnes directs our attention to the testimony of three witnesses. The first is that of Mr. Don Simmons who testified he purchased methamphetamine from Mr. Barnes on three occasions during the Summer and Fall of 1988. Mr. Barnes asserts that "one could easily assume ... the drug that he received from Barnes would have come from" some source other than that charged.
 
 
 8
 The flaw in Mr. Barnes' argument is the record fails to support it. The indictment charges the time frame of the conspiracy to be May 1986 through December 1989. Another witness (Mr. Scott) testified that some time in the Summer of 1988 to October of 1988 he recommended to the ringleader of the conspiracy that Mr. Barnes be engaged as a distributor of the illegal drugs. A reasonable inference of this testimony is that Mr. Barnes began his services as a distributor for the conspiracy during this time frame. The fact that other evidence existed that would tend to show Mr. Barnes' involvement with the conspiracy began later was a question for the jury. There existed no evidence that would even suggest Mr. Barnes was a distributor of any drugs other than those manufactured by the conspiracy.
 
 
 9
 The next alleged Rule 404(b) evidence was that of Ralph Thomas (the cook of the illegal drugs) who, in response to a question by Mr. Barnes' counsel concerning his immunity agreement, testified he was testifying on his own behalf "because I don't want to wind up getting killed when I get out." He was then asked if he was saying the Government was protecting him from being killed, and he responded "No," he was protecting himself by not coming back to Oklahoma when he got out of prison. A fair reading of this record shows this exchange cannot be attributed to the Government, nor does the answer indicate that the witness's fears were directed toward the defendant Mr. Barnes. Defense counsel, who was able and experienced, was not sufficiently disturbed to object or request any instructions concerning this exchange. The "evidence" was simply too tenuous to constitute valid Rule 404(b) evidence.
 
 
 10
 The final evidence Mr. Barnes directs our attention to is that of Mr. Vestal. On direct examination, Mr. Vestal was describing Mr. Youngpeter's involvement in the conspiracy and was asked why Mr. Youngpeter was present on a particular occasion, and whether the ringleader (Mr. Glover) ever told him why Mr. Youngpeter was present. The witness replied: "Something to do with a stolen trailer or something like that, or to paint--paint a car for him or something like that." Again this evidence does not appear to be directed toward Mr. Barnes and is too tenuous to constitute Rule 404(b) evidence.
 
 
 11
 We hold the admission of the evidence complained of does not constitute plain error.
 
 II
 Prosecutorial Misconduct
 
 12
 Mr. Barnes, for the first time, raises four allegations of prosecutorial misconduct; three instances relate to the examination of witnesses and the fourth relates to closing argument. As no objections were raised in the trial court, we will review these assertions under the plain error standard of review. See United States v. Lonedog, 929 F.2d 568, 570 (10th Cir.), cert. denied, 112 S.Ct. 164 (1991).
 
 
 13
 Mr. Barnes asserts the Government improperly vouched for and bolstered the credibility concerning three of its witnesses.
 
 
 14
 The first incident relates to the testimony of the Government's witness, Rebecca Glover. During cross-examination by three defense counsel, much was made of the immunity agreement and the witness's credibility or lack thereof. Upon redirect examination, the following exchange occurred:
 
 
 15
 Q. Has the Government ever asked you to do anything besides tell the truth?
 
 
 16
 A. No, sir.
 
 
 17
 Q. Has your testimony here today been the truth?
 
 
 18
 A. Yes, sir, it has.
 
 
 19
 The second incident involved redirect examination of Mr. Johnny Glover, the ringleader of the conspiracy. Mr. Glover was subjected to strong cross-examination about his credibility. On redirect examination, the following exchange took place:
 
 
 20
 Q. Do you understand that he was asking you whether or not you were so angry with Roy, because Roy wouldn't hire big time lawyers for you, that you would lie on the witness stand?
 
 
 21
 A. I'm here to tell the truth and the truth only.
 
 
 22
 Q. All right. That is, you don't have any anger or animosity against Roy which would cause you to tell lies against him, do you?
 
 
 23
 A. No, sir, I haven't.
 
 
 24
 In both of these exchanges the defense opened the issue of the witnesses' credibility during cross-examination by making strong attacks on their credibility and the prosecution responded upon redirect. Neither exchange, however, involved any indication by the prosecution that it personally believed in the credibility of the witness or that it was otherwise trying to verify the truthfulness of the testimony. See United States v. Bowie, 892 F.2d 1494, 1498 (10th Cir.1990).
 
 
 25
 The third incident occurred during the cross-examination of one of Mr. Barnes' co-defendants, Mr. Roy Glover. The prosecutor asked Mr. Glover a series of questions concerning Mr. Glover's alleged attempts to assure that certain Government witnesses did not appear for the trial by being out of the area. Mr. Barnes' assertion that this exchange somehow involved one prosecutor's expression of opinion concerning the credibility of this witness is unfounded.
 
 
 26
 The fourth and final assertion of prosecutorial misconduct occurred during closing. There the prosecutor stated the following concerning its witnesses: "View their testimony with caution, but view it with credibility, because their testimony is credible, because they were there, they saw it."
 
 
 27
 This case was vigorously and ably defended. The prosecutor's statement during closing argument was in direct response to the arguments of four defense counsel. The failure of the prosecution to respond could well have been taken by the jury as an admission the witnesses were lying. Defense counsel were not sufficiently disturbed at the time of the prosecution's closing argument to object. The prosecution expressed no opinion, but instead, simply argued the testimony should be believed as it was eyewitness testimony. Such argument does not amount to improper vouching.
 
 III
 Ineffective Assistance of Counsel
 
 28
 Mr. Barnes contends trial counsel's failure to object to the evidence and arguments previously set forth amounts to ineffective assistance of counsel.
 
 
 29
 Under Strickland v. Washington, 466 U.S. 668, 687, 694 (1984), the defendant must show both deficient performance by counsel and a reasonable probability that, but for the deficient performance, the trial result would have been different. While trial counsel's performance may not have been perfect--none is--we cannot hold under the facts of this case that trial counsel's omissions were not the result of reasonable professional judgment.
 
 IV
 Cumulative Error
 
 30
 Our previous discussion renders any analysis of this contention meaningless.
 
 V
 Failure to Instruct
 
 31
 Mr. Barnes asserts the trial court's failure to instruct the jury concerning the permissible use of a co-defendant/co-conspirators guilty plea is plain error. This assertion arises from the testimony of Mr. Johnny Glover who was the ringleader and Mr. Thomas who was the primary methamphetamine cook. Both testified as to Mr. Barnes' involvement in the conspiracy.
 
 
 32
 Our discussion in United States v. Reynolds, No. 92-5000, (Feb. 18, 1993), is applicable here. This failure to instruct does not constitute error.
 
 
 33
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Howard C. Bratton, Senior United States District Court Judge for the District of New Mexico, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 See United States v. Youngpeter, --- F.2d ---- (10th Cir.1993); United States v. Reynolds, No. 92-5000 (Feb. 18, 1993); and United States v. Glover, No. 92-5001 (Feb. 18, 1993)