986 F.2d 1431
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Melvin L. REYNOLDS, Defendant-Appellant.
 No. 92-5000.
 United States Court of Appeals, Tenth Circuit.
 Feb. 16, 1993.
 
 Before STEPHEN H. ANDERSON and BRORBY, Circuit Judges, and BRATTON,* Senior District Judge.
 ORDER AND JUDGMENT**
 BRORBY, Circuit Judge.
 
 
 1
 Mr. Reynolds, together with three co-defendants,[1] was convicted of a single count of drug conspiracy. Mr. Reynolds appeals asserting plain error as the trial court failed to instruct concerning three co-conspirators' prior guilty pleas after they testified for the prosecution. Mr. Reynolds also asserts error in sentencing. We affirm Mr. Reynolds conviction but remand for sentencing.
 
 
 2
 The evidence revealed a large scale illegal drug operation involving the manufacture and distribution of methamphetamine. Mr. Reynolds' role was that of a seller of the illegally made drugs.
 
 
 3
 * Failure to Instruct
 
 
 4
 Mr. Reynolds points to the testimony of three individuals, Johnny Glover, Ralph Thomas, and Rebecca Glover. All three were co-conspirators of Mr. Reynolds and all were originally co-defendants of Mr. Reynolds. All three entered a guilty plea to various drug charges and agreed to testify. No instructions were requested nor given to limit the use of these three individuals' guilty pleas to that of assessing their credibility. Mr. Reynolds asserts this failure to instruct constituted plain error.
 
 
 5
 A review of the record reveals sixteen witnesses testified for the prosecution including three principal members of the conspiracy: Johnny Glover, who was the ringleader; Ralph Thomas, who was one of the principal "cooks" of the methamphetamine; and Rebecca Glover, who was the bookkeeper. Mr. Glover and Ms. Glover both implicated Mr. Reynolds; Mr. Thomas never implicated Mr. Reynolds in the conspiracy.
 
 
 6
 Nearly all of the sixteen witnesses were implicated in the drug trade and first testified as to their prior felony records and then as to their written agreement that gave them immunity from prosecution for the facts revealed in their testimony. Mr. Glover testified that he had pled guilty to a continuing criminal enterprise and a conspiracy to launder money, and that he had agreed to testify and cooperate with the government in return for sentencing consideration. Mr. Glover then testified as to the manufacture and distribution of the methamphetamine which included the fact that the drugs were being sold to Mr. Reynolds. Ms. Glover testified she was convicted in state court for possession of methamphetamine, dyazapine and marijuana and received probation as a result of her cooperation. She then testified as to the quantities of drugs sold to Mr. Reynolds and that Mr. Reynolds was reselling the drugs. Mr. Thomas testified that he pled guilty to conspiracy to manufacture methamphetamine and described an extensive criminal record. Mr. Thomas described the manufacture of methamphetamine by the principals, but his testimony did not incriminate Mr. Reynolds.
 
 
 7
 As there was no request for a limiting instruction or relevant objection to the instructions given, Fed.R.Crim.P. 52(b) mandates our review is for plain error, which in the case before us is the nonconstitutional harmless error standard. See United States v. Jefferson, 925 F.2d 1242, 1255 (10th Cir.), cert. denied, 112 S.Ct. 238 (1991). A harmless nonconstitutional error is one that did not have a "substantial influence" on the outcome of the trial nor can it "leave[ ] one in 'grave doubt' as to whether it had such effect." United States v. Rivera, 900 F.2d 1462, 1469 (10th Cir.1990).
 
 
 8
 It is fundamental law that the guilt of a co-conspirator or of a co-defendant may never be used to establish the guilt of a defendant. It is also well established that a co-conspirator's or co-defendant's guilty plea may not be used as substantive evidence of a defendant's guilt and the failure to give a cautionary instruction limiting the jury's use of the guilty plea may rise to the level of plain error. United States v. Austin, 786 F.2d 986, 991 (10th Cir.1986); United States v. Baez, 703 F.2d 453, 455 (10th Cir.1983). Instructions that specifically limit the use of a co-conspirator's or co-defendant's guilty plea to that of assessing credibility should be given. Baez, 703 F.2d at 455; United States v. Halbert, 640 F.2d 1000, 1006-07 (9th Cir.1981).
 
 
 9
 The trial court did give a general instruction concerning the permissible use of a guilty plea by instructing that the prior convictions "may be considered by you in weighing the credibility of that witness." This instruction failed, however, to inform the jury that this is the only permissible purpose of the guilty pleas and that the jury may not use the guilty pleas as evidence of defendant's guilt.
 
 
 10
 Reviewing the record, it is easy to understand why limiting instructions were not given. Nearly every witness for the prosecution immediately followed his identification with a recitation of his prior felony convictions. This testimony was in turn followed immediately by a disclosure of the written immunity agreement between the witness and the government. The prosecution utilized this procedure on direct examination for the permissible purpose of minimizing damage to the credibility of these witnesses. United States v. Mobile Materials, Inc., 881 F.2d 866, 875-76 (10th Cir.1989), cert. denied, 493 U.S. 1043 (1990). Direct examination was followed by defense counsel who obviously had a gleeful cross-examination concerning the obvious points to be made with such testimony. Defense counsel utilized the prior convictions and immunity agreements for the permissible purpose of attacking the credibility of the witnesses. The adversarial judicial system was then alive and thriving in the court room and for this reason neither the prosecutor, the four defense counsel, nor the court were cognizant of any potential prejudice to Mr. Reynolds.
 
 
 11
 The only use made by the prosecution of these prior convictions and immunity agreements was the permissible use of minimizing damage to the witnesses' credibility during the examination of these witnesses. Counsel for Mr. Reynolds has directed our attention to no impermissible use. Our search of the record has revealed no use of this evidence in opening, closing, or elsewhere except by defense counsel who employed this evidence to attack the credibility of these witnesses. This was simply "not a case in which the government was arguing directly or indirectly that [Mr. Reynolds was] guilty because other coconspirators had entered into immunity agreements with the government." Id. at 875.
 
 
 12
 We next examine the record evidence against Mr. Reynolds excluding the testimony from the three witnesses complained of by Mr. Reynolds. In so doing, we find that Mr. Cervantes (who testified under an immunity agreement) testified he sold methamphetamine manufactured by the operation to Mr. Reynolds who in turn informed Mr. Cervantes that the methamphetamine would make a lot of people happy and that people were coming by wanting drugs. Pamela Sue Webster testified she purchased methamphetamine from Mr. Reynolds twenty-five to thirty times and spent up to $500 per night. The fact that the government had given her immunity was brought out on cross-examination. Kerrie Webster also testified Mr. Reynolds supplied her with methamphetamine several times and Mr. Reynolds told her he was getting the methamphetamine from Johnny Glover. Mr. Vestal, who was testifying under immunity, stated he was selling methamphetamines for the Glovers to Mr. Reynolds and that Mr. Reynolds had scales and baggies and was packaging methamphetamine and that Mr. Reynolds told him his clientele consisted mainly of truckers. It thus appears that at least two witnesses who were not a part of the drug conspiracy, Pamela and Kerrie Webster, alone gave sufficient testimony to convict Mr. Reynolds. Two other witnesses (Cervantes and Vestal) who pled not guilty to the conspiracy, but who testified under immunity agreements, likewise gave more than sufficient evidence to convict Mr. Reynolds.
 
 
 13
 A failure to give cautionary instructions regarding the limited use of a co-defendant's or co-conspirator's guilty plea does not necessarily result in plain error. In making this determination, an appellate court should examine the purpose or purposes to which the evidence was used; the instructions in fact given by the trial court; and the evidence and testimony given by others. Mobile Materials, 881 F.2d at 876; United States v. Peterman, 841 F.2d 1474, 1481 (10th Cir.1988), cert. denied, 488 U.S. 1004 (1989). In the case before us, the evidence of the guilty pleas of the co-conspirators/co-defendants was in fact used by counsel solely for the purpose of testing the witnesses' credibility and there existed overwhelming evidence of Mr. Reynolds' guilt from at least four other witnesses who had no guilty pleas relating to the drug operation. We conclude plain error does not exist.
 
 
 14
 As Mr. Reynolds has not asserted it is plain error for a trial court's failure to give an instruction regarding the credibility of immunized witnesses or accomplices, we need not delve into this area.
 
 
 15
 We therefore hold the failure of the trial court to give a limiting instruction concerning the use of a co-conspirator's or co-defendant's guilty plea is not plain error based upon the facts of this case.
 
 II
 Sentencing Error
 
 16
 The trial court sentenced Mr. Reynolds to ten years confinement. The court's rationale was this was the minimum sentence allowed by applicable law, 21 U.S.C. § 841(b)(1)(A)(viii) (1988), which provides for a minimum mandatory sentence of ten years if the offense involved "100 grams or more of methamphetamine or 1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine." The presentence report, which was not challenged, attributed 680 grams to Mr. Reynolds.
 
 
 17
 Mr. Reynolds asserts the sentencing court's application of this law was erroneous as the evidence was insufficient to invoke the minimum mandatory sentence of ten years. As no objections were raised at the time of sentencing, Mr. Reynolds asserts the sentencing error is plain error.
 
 
 18
 Mr. Reynolds was convicted of a conspiracy to manufacture and distribute a controlled substance. The penalty for a drug conspiracy depends upon the quantity of the drug involved (21 U.S.C. §§ 846 and 841(b)), which is determined by the sentencing court. See United States v. Poole, 929 F.2d 1476, 1483 (10th Cir.1991). The presentence report stated Mr. Reynolds was involved in "the purchase and/or distribution of only approximately 680 grams of methamphetamine." Mr. Reynolds now attacks the truth of this statement arguing that he used some of the methamphetamine he purchased and the evidence introduced at trial would evidence something far less. Mr. Reynolds also argues that even assuming he distributed the entire 680 grams stated in the presentence report, the methamphetamine was not pure. Johnny Glover testified the methamphetamine was delivered to Mr. Reynolds after it was cut. Therefore, Mr. Reynolds asserts that the 680 grams falls short of the one kilogram required for a minimum ten year sentence.
 
 
 19
 This court cannot rule upon a disputed factual contention raised for the first time on appeal. Mr. Reynolds was given the opportunity to challenge the facts contained in the presentence report before the district court and then acknowledged it to be accurate and correct. The presentence report states that Mr. Reynolds was involved with "680 grams of methamphetamine." Nothing in the report suggests that the 680 grams was actually of a substance containing methamphetamine and that therefore, one kilogram is necessary to invoke the ten year minimum sentence. Our interpretation is supported by the fact that the presentence report determined that 10 years was the applicable guideline sentence based upon § 841(b)(1)(A)(viii).
 
 
 20
 Ordinarily, Mr. Reynolds' failure to object to the quantity and purity of methamphetamine set forth in the presentence report would result in those facts being established before this court. However, the government in its brief concedes the inaccuracy of the presentence report by stating that the methamphetamine handled by Mr. Reynolds was cut, and therefore, one kilogram is the amount necessary to invoke the ten year minimum mandatory sentence. While it may be true, as the government argues, that an additional 320 grams of methamphetamine can be attributed to Mr. Reynolds, we are not prepared to make such a factual finding. Instead, we remand to the district court to determine the quantity and purity of methamphetamine attributable to Mr. Reynolds and to sentence him accordingly.
 
 
 21
 We AFFIRM Mr. Reynolds conviction, but REMAND to the district court for sentencing consistent with this opinion.
 
 
 
 *
 The Honorable Howard C. Bratton, Senior United States District Court Judge for the District of New Mexico, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 See United States v. Mike Youngpeter, --- F.2d ---- (10th Cir.1993); United States v. Glover, No. 92-5001 (Feb. 18, 1993); and United States v. Barnes, No. 92-5002 (Feb. 18, 1993)