**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Roderick K. DIRDEN, Defendant–
Appellant.**

No. 93–4235.

United States Court of Appeals,
Tenth Circuit.

Oct. 27, 1994.

---

Submitted on the Briefs: *

Benjamin P. Knowlton, Salt Lake City, UT, for defendant-appellant.

Scott M. Matheson, Jr., U.S. Atty., and Bruce C. Lubeck, Asst. U.S. Atty., Salt Lake City, UT, for plaintiff-appellee.

Before ANDERSON, McKAY, and BRORBY, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

Roderick Dirden appeals his convictions on charges of aiding and abetting in the possession of a Schedule II controlled substance (cocaine base) with intent to distribute, 18 U.S.C. § 2; 21 U.S.C. § 841(a)(1), and carrying and use of a firearm during and in relation to a drug trafficking crime, 18 U.S.C. §§ 2, 924(c). He raises essentially four issues on appeal: first, that he has been denied the right to a speedy trial, in violation of 18 U.S.C. § 3161(c)(1) and the Sixth Amendment to the United States Constitution; second, that the district court erred in denying his motion to suppress evidence obtained, according to Dirden, as the result of an illegal "pretext" stop; third, that the district court improperly denied his motion to sever his trial from that of his codefendant, Darrell Lewis; and fourth, that the evidence adduced at trial was insufficient to sustain the jury verdict rendered against him. We affirm.

## BACKGROUND

On January 9, 1992, at approximately 10:00 a.m., Sevier County Deputy Sheriff Phil Barney was patrolling a section of Interstate 70 near Richfield, Utah, when he observed a 1984 Oldsmobile traveling eastbound approximately three miles north of the city. The deputy noted that the vehicle was following closely behind another eastbound automobile, that the Oldsmobile changed lanes without signaling, that it was weaving "quite badly" from side to side, and that the vehicle had an expired temporary permit and expired license plates. R.Vol. I, Doc. 87 at 3; R.Vol. I, Doc. 114 at 5; R.Supp.Vol. II at 8–9. Deputy Barney pulled the Oldsmobile over and, as he approached, noticed for the first time that the vehicle was occupied by three black males. R.Supp.Vol. II at 12.[1]

Dirden was the driver. He told the deputy that he did not have his driver's license with him, and he identified himself as "Tony Rahn." Deputy Barney then asked for identification from the other occupants of the car. The front seat passenger, Darrell Lewis, produced a valid California driver's license and the third occupant, Lavert Young, although unable to provide a driver's license, produced a prescription medicine bottle with his name on it. Young also gave to the deputy a temporary registration in the name of Yvonne Holley and Barbara Collins and told the deputy that the automobile belonged to his aunt and grandmother.

Deputy Barney returned to his vehicle and radioed his dispatcher, requesting a driver's license check on the name "Rahn," and a National Crime Information Computer ("NCIC") check on all three occupants for any outstanding wants or warrants.[2] The dispatcher informed Deputy Barney that Tony Rahn was wanted in California for armed robbery and that there was an outstanding warrant for his arrest.

Deputy Barney remained in his vehicle until State Trooper Jim Hillman and Sevier County Sheriff John Mecham arrived at the scene. At that point, Deputy Barney ap-

---

* The parties have agreed that this case may be submitted for decision on the briefs. *See* Fed. R.App.P. 34(f); 10th Cir.R. 34.1.2. The case is therefore ordered submitted without oral argument.

1. A video camera mounted on the front of the patrol vehicle was activated when the deputy turned on his emergency lights, thus capturing on video the ensuing stop and search of the vehicle. A microphone attached to the deputy's shirt also captured some of the succeeding verbal exchanges; however, portions of the audio rec-ord were muffled or otherwise garbled. The audio/video tape of the stop was admitted into evidence at trial. *See* R.Vol. II at 35.

2. The deputy testified that if the driver of an automobile is unable to provide a driver's license and the registered owner of the vehicle is not present in the vehicle, it is his normal procedure to ask for identification from and run an NCIC check on all occupants of the vehicle. R.Supp. Vol. II at 30–31.

proached the Oldsmobile and directed the occupants to step out. He informed them of the felony warrant on Tony Rahn, asked them if they had any weapons, and proceeded to pat them down. Lewis then urged Dirden to "tell them your real name," whereupon Dirden admitted to the officers that his name was not Rahn, but was in fact Roderick Dirden. He told the officers that his identification was in the vehicle, between the two front seats, and that he, Dirden, would get it. Instead of allowing Dirden to retrieve his identification, however, Deputy Barney entered the passenger's side of the vehicle to retrieve it. As he did so, he observed the butt of a gun protruding from under the armrest located between the two front seats. He removed a fully loaded .38 caliber revolver from the vehicle and inquired of the occupants as to who owned the gun. None of the three responded.

After handcuffing the three men, Deputy Barney returned to the vehicle to locate Dirden's identification. As he did so, he observed some marijuana seeds on the floor and some particles of marijuana in the passenger's seat. Deputy Barney continued to search the interior of the vehicle, finding more marijuana particles and a "roach" in the ash tray. He then proceeded to search the trunk of the vehicle, finding a bag containing a set of scales and 426 grams of cocaine base. R.Vol. II at 19–21, 68. The deputy arrested all three, advised them of their rights, and they were transported to the Sevier County Jail.

On January 16, 1992, a federal grand jury indicted Dirden and Lewis on the narcotics and weapons charges described above and trial was set for March 23, 1992. On March 16, 1992, Dirden filed a motion to sever his trial from that of Lewis.[3] He also filed a motion to continue the trial. In the motion to continue, counsel for Dirden claimed that newly discovered evidence would substantially affect the defense trial strategy. R.Vol. I, Doc. 45. Following a hearing on March 17,

1992, the United States Magistrate Judge granted the motion to continue.[4]

On March 20, 1992, Dirden filed a motion to suppress evidence seized during the search of the Oldsmobile, and a hearing on that motion was held before the magistrate judge on April 9, 1992. On July 22, 1992, the magistrate judge issued his Report and Recommendation ("R & R"), recommending that Dirden's motion to suppress be denied. Over Dirden's objections, the district court subsequently adopted the magistrate judge's recommendation and denied the motion.

On July 23, Dirden filed a motion to dismiss claiming a violation of his statutory and constitutional right to a speedy trial. The district court denied this motion on August 18, and a jury trial was held September 1 and 2, 1992. Both defendants were convicted on both counts. Dirden appeals.

### I. SPEEDY TRIAL

Dirden's first argument on appeal is that he has been denied his statutory and constitutional right to a speedy trial. Compliance with the requirements of the Speedy Trial Act is a question of law which we review de novo. *United States v. Pasquale,* 25 F.3d 948, 950 (10th Cir.1994). Similarly, we review de novo Dirden's claim that his Sixth Amendment right to a speedy trial has been violated. *United States v. Occhipinti,* 998 F.2d 791, 796 (10th Cir.1993).

#### A. *Speedy Trial Act*

The Speedy Trial Act requires that the trial of a criminal defendant commence within seventy days of the filing of the indictment, or from the date the defendant first appears before a judicial officer of the court, whichever is later. 18 U.S.C. § 3161(c)(1). After setting forth this general mandate, the Act enumerates certain exceptions to the rule and excludes the following periods of delay from the seventy-day computation:

**3.** This motion was denied by the magistrate judge on July 20, 1992. R.Vol. I, Doc. 79.

**4.** The motion was granted on the grounds that the ends of justice served by granting the contin-

uance outweighed the best interest of the public and the defendant in a speedy trial. R.Vol. I, Doc. 46; *see* 18 U.S.C. § 3161(h)(8)(A).

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

. . . .

(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

. . . .

(J) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

18 U.S.C. § 3161(h)(1)(F), (J). In this case, the Speedy Trial Act clock began to run on January 17, 1992, the date of Dirden's arraignment. Dirden's trial, however, did not begin until September 1, 1992. Thus, Dirden remained in federal custody for 228 days awaiting trial.

■ Dirden claims that this lengthy delay violated the Speedy Trial Act. He contends first that the period during which the magistrate judge had the motion to suppress under advisement was improperly excluded by the district court from the seventy-day calculation; and second, that the district court failed to provide sufficient reasoning for finding that the ends of justice outweighed the interests of the public and the defendant in a speedy trial.[5]

In order to address Dirden's first objection, it is necessary to construct a time line. Dirden filed his motion to suppress on March 20, 1992; a suppression hearing was held on April 9, 1992 (the transcript of which was made available to the magistrate judge on April 29, 1992); the magistrate judge issued his R & R, recommending that the motion be denied, on July 22, 1992; Dirden filed his objection to the R & R on August 4, 1992; and the district court adopted the R & R, denying Dirden's motion to suppress, on August 28, 1992.

The district court found the entire period from March 20, 1992 to August 4, 1992, excludable under section 3161(h)(1)(F). The court reasoned that it could not have taken the motion "under advisement" until it was placed in a position to rule on the motion. *See United States v. Willie*, 941 F.2d 1384, 1388 n. 2 (10th Cir.1991), "Excludable time includes 'all time that is consumed in placing the trial court in a position to dispose of a motion.'" (quoting *Henderson v. United States*, 476 U.S. 321, 331, 106 S.Ct. 1871, 1877, 90 L.Ed.2d 299 (1986)), *cert. denied*, —— U.S. ——, 112 S.Ct. 1200, 117 L.Ed.2d 440 (1992). According to the district court, it was not in a position to rule on the motion while the magistrate judge was gathering information and incorporating it into an R & R, and thereafter until August 4, the date Dirden filed his objections to the R & R.

■ Dirden, on the other hand, argues that the thirty-day "under advisement" period permitted by subsection (J) includes time consumed by both the magistrate judge and the district court, and that the court erred in excluding additional days relating to the magistrate judge's work on the motion to suppress. Thus, according to Dirden, only 30 of the 105 days which elapsed from the time of the suppression hearing were excludable.[6] He urges us to adopt a rule, embraced by three circuits, applying the thirty-

---

5. We do not address Dirden's second argument because it misconstrues the district court's ruling. In granting a *continuance* based on the ends of justice, it is incumbent upon the court to state on the record why the continuance strikes the proper balance between the ends of justice on the one hand and the rights of the defendant and the public to a speedy trial on the other. *United States v. Doran*, 882 F.2d 1511, 1515 (10th Cir.1989); *see* 18 U.S.C. § 3161(h)(8)(A). However, in its order denying Dirden's motion to dismiss, the district court was not addressing an ends of justice continuance, but merely used the phrase in another context.

6. This calculation is wrong in any event. It is not disputed that the time from filing the motion until the suppression hearing is excludable under § 3161(h)(1)(F). Additionally, the 30–day period under subsection (J) could not have begun to run until April 29, the date that the magistrate judge received a transcript of the hearing. *See Willie*, 941 F.2d at 1388 n. 2; *see also United States v. Polan*, 970 F.2d 1280, 1285 (3d Cir.1992) (holding period during which court was awaiting hearing transcript excludable under § 3161(h)(1)(F)), *cert. denied*, —— U.S. ——, 113 S.Ct. 1367, 122 L.Ed.2d 745 (1993). Thus, even under Dirden's view, 50 of the 105 days were excludable.

day "under advisement" restriction of section 3161(h)(1)(J) to the magistrate judge as well as the district court.[7] We need not decide this issue, however, because we find that the trial was held within seventy nonexcludable days.[8]

■ Dirden filed numerous pretrial motions which tolled the seventy-day period. Delay resulting from the filing of any pretrial motion, "from the filing of the motion through the conclusion of the hearing on, or prompt disposition of, such motion" is excluded. 18 U.S.C. § 3161(h)(1)(F); *see Willie*, 941 F.2d at 1387. Additionally, Dirden's codefendant Lewis also filed a number of pretrial motions, each of which tolled the seventy-day period as to Dirden. 18 U.S.C. § 3161(h)(7); *see United States v. Tranakos*, 911 F.2d 1422, 1426 (10th Cir.1990) ("[A]ny 'reasonable period of delay' excludable as to one defendant is excludable as to his or her codefendants."). Applying the subsection (F) tolling periods to the motions filed in this case, as outlined in the statement of facts above, we still calculate 165 excludable days. Thus, even allowing for Dirden's subsection (J) "under advisement" argument, only sixty-three nonexcludable days lapsed between Dirden's arraignment and trial, well within the seventy-day requirement of the Speedy Trial Act. Accordingly, the Speedy Trial Act was not violated and the district court did not abuse its discretion in denying Dirden's motion on this ground.

**B. Sixth Amendment Right to a Speedy Trial**

■ We turn next to Dirden's claim that the seven and one-half month delay between his arraignment and trial rises to the level of a constitutional violation. "A Sixth Amendment speedy trial claim is assessed by balancing the length of the delay, the reason for the delay, whether the defendant asserted his right to a speedy trial, and whether the delay prejudiced the defendant." *United States v. Tranakos*, 911 F.2d 1422, 1427 (10th Cir.1990) (citing *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972)); *see United States v. Occhipinti*, 998 F.2d 791, 798 (10th Cir.1993). While no single factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial," *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193, only if the period of delay is "presumptively prejudicial" need we inquire into the other factors. *Tranakos*, 911 F.2d at 1427.

We have not drawn a bright line beyond which pretrial delay will trigger a *Barker* analysis. *See Occhipinti*, 998 F.2d at 798 (delay of 172 days insufficient to trigger *Barker* analysis); *United States v. Kalady*, 941 F.2d 1090, 1095–96 (10th Cir.1991) (eight-month delay between indictment and trial nonprejudicial); *United States v. Bagster*, 915 F.2d 607, 611 (10th Cir.1990) (delay of

---

**7.** *See United States v. Long*, 900 F.2d 1270, 1275 (8th Cir.1990) ("We see no reason to exempt magistrates from the statutory limit of 30 excludable days for taking of a motion under advisement after receiving all materials needed to decide it."); *United States v. Thomas*, 788 F.2d 1250, 1258 (7th Cir.) (after extended discussion, suggesting, without holding, that the 30–day limitation of § 3161(h)(1)(J) is applicable to federal magistrate judges), *cert. denied*, 479 U.S. 853, 107 S.Ct. 187, 93 L.Ed.2d 121 (1986); *United States v. Mers*, 701 F.2d 1321, 1337 (11th Cir.) ("[T]he magistrate and the district court have thirty days each during which to take pretrial motions under advisement."), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 482, 78 L.Ed.2d 679 (1983).

In response, the Government argues that while a 30–day limitation on the magistrate judge may be good policy, it is not the law. *See Henderson*, 476 U.S. at 331, 106 S.Ct. at 1877 ("[S]ubsection (F) excludes time after a hearing has been held

where a *district court* awaits additional filings from the parties that are needed for proper disposition of the motion." (emphasis added)); *see also* R.Vol. I, Doc. 115 at 3 (district court's order denying Dirden's motion stating that motion to suppress "could not be before 'the court' until the judicial officer with authority to rule on the matter receives the Magistrate Judge's Report and Recommendation and the parties' [sic] have objected"). Resolution of this issue obviously involves, among other things, an examination of the distinctions between Article I and Article III courts. As noted above, however, because we find that Dirden's trial commenced within 70 nonexcludable days, we need not, and therefore do not, address the issue in this case.

**8.** "We are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Sandoval*, 29 F.3d 537, 542 n. 6 (10th Cir.1994).

thirty months insufficient to trigger *Barker* analysis). *But see Perez v. Sullivan,* 793 F.2d 249, 255 (10th Cir.) (fifteen-month delay triggered *Barker* analysis), *cert. denied,* 479 U.S. 936, 107 S.Ct. 413, 93 L.Ed.2d 364 (1986); *cf. Doggett v. United States,* — U.S. —, — n. 1, 112 S.Ct. 2686, 2691 n. 1, 120 L.Ed.2d 520 (1992) ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year.").

Nevertheless, we do not find the seven and one-half month delay between Dirden's arraignment and trial "presumptively prejudicial." Furthermore, and in any event, the remaining *Barker* factors, taken in the aggregate, do not favor Dirden.

▪ The second *Barker* factor is the reason for the delay. As previously noted, much of the delay in this case is attributable to the numerous pretrial motions filed, and to Dirden's own motion to continue. These delays do not weigh against the government. *Tranakos,* 911 F.2d at 1428; *see United States v. Loud Hawk,* 474 U.S. 302, 316–17, 106 S.Ct. 648, 656–57, 88 L.Ed.2d 640 (1986); *United States v. Askew,* 584 F.2d 960, 962 (10th Cir.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979). However, as the government concedes, the work load of the magistrate judge also contributed to the delay. Although delay attributable to an overburdened magistrate judge should be weighed less heavily than an intentional delay on the part of the government attorney, *see Tranakos,* 911 F.2d at 1428; *United States v. Jenkins,* 701 F.2d 850, 856 (10th Cir.1983), the delay "nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker,* 407 U.S. at 531, 92 S.Ct. at 2192; *United States v. Latimer,* 511 F.2d 498, 501 (10th Cir.1975). There is nothing in this record suggesting intentional delay on the part of the government, which would weigh heavily against it. Nevertheless, some of the

delay is attributable to the government and therefore weighs slightly in Dirden's favor.

Respecting the third factor, we have found that the "defendant's assertion of the speedy trial right, 'is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.'" *Kalady,* 941 F.2d at 1095 (quoting *Barker,* 407 U.S. at 531–32, 92 S.Ct. at 2192–93). Here, Dirden moved for a continuance on March 16, 1992, and he asserted no speedy trial claim even as two trial settings were vacated.[9] It was not until the magistrate judge issued his R & R recommending that Dirden's motion to suppress be denied that Dirden asserted his right to a speedy trial. Thus, this factor weighs against him.

▪ As to the last *Barker* factor, we are unable to find any evidence in the record that the delay prejudiced Dirden. "We assess prejudice in light of three interests: preventing oppressive pretrial incarceration; minimizing anxiety and concern of the accused; and limiting the possibility that the defense will be impaired." *Kalady,* 941 F.2d at 1095. Of these interests, the last is the most serious "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193. In this case, Dirden has not directed us to anything in the record supporting his claim of prejudice. He identifies no witness who would have been available but for the delay. *See United States v. Villano,* 529 F.2d 1046, 1060 (10th Cir.), *cert. denied,* 426 U.S. 953, 96 S.Ct. 3180, 49 L.Ed.2d 1193 (1976). Nor does he claim that witnesses' memories have faded as a result of the delay. *See Tranakos,* 911 F.2d at 1429 ("Prejudice occurs only when '*defense* witnesses are unable to recall accurately events of the distant past.'" (quoting *Barker,* 407 U.S. at 532, 92 S.Ct. at 2193)). Moreover, while Dirden undoubtedly experienced concern and anxiety over his impending trial, he has not alleged any special harm suffered which distinguishes his case from that of any other arrestee awaiting trial. *See*

9. Trial initially was rescheduled for May 6, 1992. That setting was vacated and trial was set for July 7, 1992. That setting was vacated and trial was again rescheduled for September 1, 1992. R.Vol. I, Docs. 61, 78.

*United States v. Chavez,* 979 F.2d 1350, 1354–55 (9th Cir.1992).

In sum, after analyzing the pretrial delay in this case in light of the *Barker* factors, we find no violation of Dirden's Sixth Amendment right to a speedy trial. Accordingly, the district court properly denied Dirden's motion to dismiss on this ground.

## II. AUTOMOBILE STOP—PRETEXT

 Dirden claims that Deputy Barney's stop of the Oldsmobile for alleged traffic irregularities was a mere pretext. According to Dirden, the deputy profiled the occupants based on their race and stopped them in order to search for drugs. Therefore, he argues, the stop and ensuing search violated his rights under the Fourth Amendment and all evidence obtained pursuant to the illegal stop should have been suppressed.[10] In reviewing Dirden's Fourth Amendment claim, we review all evidence in a light most favorable to the district court's findings, *United States v. Walker,* 933 F.2d 812, 815 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1168, 117 L.Ed.2d 414 (1992), and uphold the factual findings of the district court unless they are clearly erroneous. *United States v. Fernandez,* 18 F.3d 874, 876 (10th Cir.1994). At a suppression hearing, the credibility of the witnesses and the weight to be given the evidence, together with the inferences to be drawn from that evidence, all are matters to be determined by the court. *Walker,* 933 F.2d at 815. The ultimate determination of reasonableness un-

der the Fourth Amendment is a question of law which we review de novo. *Fernandez,* 18 F.3d at 876.

 "A pretextual stop occurs when an officer uses some legal justification to stop a person or vehicle in order to investigate unrelated criminal matters for which the officer lacks reasonable suspicion." *Id.* We apply an objective standard in evaluating the police officer's conduct and do not ask whether the officer could validly have made the stop, but whether a reasonable officer, similarly situated, would have made the stop in the absence of an invalid purpose. *United States v. Guzman,* 864 F.2d 1512, 1515 (10th Cir.1988).

 At the suppression hearing, the magistrate judge heard testimony from Deputy Barney, Mr. Dirden, and Darrell Lewis. The magistrate judge was able to assess the credibility of each witness and he determined that the testimony of the deputy was more credible. The magistrate judge found, and the district court accepted, the following: the Oldsmobile being driven by Dirden changed lanes without signaling, followed another vehicle too closely, was weaving from side to side, and had an expired temporary permit and license plate; the operation of the vehicle suggested that the driver was intoxicated or falling asleep; and, while Deputy Barney was able to see two occupants in the vehicle, it was not until he made the stop and approached the automobile that he noticed their race.[11] These factual findings are not clearly

10. In addition to his pretext argument, Dirden also claims that his continued detention and the search of the Oldsmobile were constitutional violations in their own right. Dirden raises these issues for the first time on appeal. He did not raise the issues in his motion to suppress nor did he raise them at the suppression hearing. Indeed, the magistrate judge's R & R focused on the exact nature of Dirden's challenge: "Dirden's motion to suppress (File Entry # 47) challenges the stop as pretextual. This is the extent of Dirden's motion to suppress," R.Vol. I, Doc. 87 at 9, and Dirden did not challenge this analysis.

Federal Rule of Criminal Procedure 12(b)(3) requires that a motion to suppress be made prior to trial, and Rule 12(f) provides that failure to do so constitutes a waiver. By failing to challenge anything but the stop in the proceedings below, Dirden has waived any other challenges on ap-

peal. *See United States v. DeWitt,* 946 F.2d 1497, 1502 (10th Cir.1991) (waiver provision of 12(f) "applies not only to the failure to include a particular motion, but also to the failure to make a pretrial argument in the motion"), *cert. denied sub nom. Rison v. United States,* —— U.S. ——, 112 S.Ct. 1233, 117 L.Ed.2d 467 (1992).

11. R. Vol. I, Docs. 87 at 3–4, 114 at 2. Dirden makes much of the fact that "in the previous year, Officer Barney had made between 20 to 45 stops detecting drugs, 50% of which involved minorities." Appellant's Br. at 11. Such statistics are irrelevant in this case since the evidence presented at the suppression hearing clearly established objective, nonpretextual grounds for the stop. *See United States v. Neu,* 879 F.2d 805, 808 (10th Cir.1989); *Guzman,* 864 F.2d 1512, 1517 (10th Cir.1988).

erroneous. The question, therefore, is whether the findings establish pretext.

In *United States v. Harris*, 995 F.2d 1004 (10th Cir.1993), we held the stop of the defendant's vehicle "objectively reasonable" where two police officers had observed the defendant's failure to signal and the "erratic and attention-alerting manner" in which his vehicle was being driven. *Id.* at 1005–06. We further noted that whether or not a reasonable officer would issue a citation under such circumstances is irrelevant. The relevant inquiry is whether a reasonable officer would make the stop. *Id.* at 1005; *see also United States v. Deases*, 918 F.2d 118, 121 (10th Cir.1990) (" '[R]easonable practice' and not 'subjective purpose' governs."), *cert. denied*, 501 U.S. 1233, 111 S.Ct. 2859, 115 L.Ed.2d 1026 (1991).

In this case, Deputy Barney observed two moving violations—improper lane change and following too closely—and he noted that the vehicle's temporary permit had expired. Furthermore, based upon the way the vehicle was weaving from side to side, the deputy suspected that the driver of the vehicle may have been intoxicated.[12] His testimony was that, in such a case, it is his usual practice to stop the vehicle in order to ensure that the driver is alert. There can be no question that a reasonable officer patrolling the interstate highway, whose duty it is to safeguard the traveling public, would stop a vehicle being driven in such a manner. *See Harris*, 995 F.2d at 1006; *cf. United States v. Betancur*, 24 F.3d 73, 77 (10th Cir.1994) (objectively reasonable for officer to stop a motorist traveling nine miles over speed limit). Nothing in the record supports a contrary finding. *See United States v. Horn*, 970 F.2d 728, 731 (10th Cir.1992) ("Absent introduction of any rationale for the stop outside the parameters of the traffic violations, the stop cannot, by definition, be called 'pretextual.' ").

We conclude that a reasonable officer patrolling the interstate highway would have stopped the vehicle being driven by Dirden. The district court did not err in denying Dirden's motion to suppress.

## III. MOTION TO SEVER

■■■■ Dirden next challenges the district court's denial of his motion to sever. Separate trials are not a matter of right where two defendants allegedly participated in the same act or transaction giving rise to the criminal offense. *United States v. Davis*, 436 F.2d 679, 681 (10th Cir.1971). The decision whether to grant or deny a motion to sever trials is within the trial court's discretion and will not be disturbed on appeal absent a showing of an abuse of discretion. *United States v. Flanagan*, 34 F.3d 949, 952 (10th Cir.1994). Denial of a motion to sever is not an abuse of discretion unless "there is a serious risk that a joint trial [will] compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, —— U.S. ——, ——, 113 S.Ct. 933, 938, 122 L.Ed.2d 317 (1993).

■■■■ The district court may order severance if it appears that a defendant "is prejudiced by a joinder of offenses or of defendants." Fed.R.Crim.P. 14. Before exercising its discretion to grant a motion to sever, however, the trial court must weigh prejudice to the defendant caused by joinder against the "obviously important considerations of economy and expedition in judicial administration." *United States v. Petersen*, 611 F.2d 1313, 1331 (10th Cir.1979), *cert. denied*, 447 U.S. 905, 100 S.Ct. 2985, 64 L.Ed.2d 854 (1980). It is not enough for Dirden to show that severance would have enhanced his chances of acquittal. *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir.), *cert. denied sub nom. Hines v. United States*, 493 U.S. 943, 110 S.Ct. 348, 107 L.Ed.2d 336 (1989); *United States v. Hayes*, 861 F.2d 1225, 1231–32 (10th Cir.1988). He must, rather, make a strong showing of prejudice. "This burden is heavy for the defendant to bear as he must show more than a better chance of acquittal or a hypothesis of prejudice, he must, in fact, show real prejudice." *United States v.*

---

**12.** Driving under the influence of alcohol, following another vehicle too closely, and improper lane change all are violations of Utah law. Utah Code Ann. §§ 41–6–44, 62, 69 (1993 & Supp. 1994).

*Youngpeter*, 986 F.2d 349, 353 (10th Cir.1993) (citation omitted).

 Severance may be necessary if the defenses are "so antagonistic that they are mutually exclusive." *United States v. Esch*, 832 F.2d 531, 538 (10th Cir.1987), *cert. denied*, 485 U.S. 908, 108 S.Ct. 1084, 99 L.Ed.2d 242 (1988). Severance is not warranted, however, merely because defense theories conflict or because one defendant is attempting to cast blame on the other. *United States v. McClure*, 734 F.2d 484, 488 (10th Cir.1984). "Mutually antagonistic defenses are not prejudicial per se." *Zafiro*, —— U.S. at ——, 113 S.Ct. at 938. The defenses truly must be mutually exclusive, such that the jury could not believe the core of one defense without discounting entirely the core of the other. *United States v. Linn*, 31 F.3d 987, 992 (10th Cir.1994) (citing *United States v. Swingler*, 758 F.2d 477, 495 (10th Cir.1985)).

 Dirden essentially makes two arguments on this point. He first maintains that, but for the denial of his motion to sever, he would have called certain witnesses whose testimony would have been helpful to his case.[13] In essence, he argues that his chances for acquittal would have been improved had these witnesses testified. Dirden urges us to accept his "hypothesis of prejudice," but nowhere in the record do we find "real prejudice." *See Youngpeter*, 986 F.2d at 353. We accordingly reject this argument.

 Dirden next asserts that his and Lewis's defenses were mutually exclusive and antagonistic. The mutual exclusion and antagonism that Dirden refers to is simply that both defendants proffered the same defensive argument: "it wasn't mine." Dirden's defense was that the firearm and narcotics were not his; Lewis's defense was the same. There were three people in the vehicle: Dirden, Lewis, and Lavert Young. Hypothetically, the jury could have reached numerous conclusions based upon its consideration of the evidence. It may have concluded that all three men were involved in the criminal episode or that none were involved. The jury could have accepted Dirden's story that he was nothing more than an innocent passenger in the car, or it was free to reject that theory. In any event, there is no basis for concluding that Lewis's and Dirden's defenses were mutually exclusive or antagonistic. A jury accepting Lewis's defense that the drugs and firearm were not his would not be compelled to reject Dirden's defense that the drugs and firearm were not his. *See Swingler*, 758 F.2d at 496.

We reiterate that the mere possibility of antagonistic defenses provides an inadequate basis for severing trials. *See id.* at 495. "[W]hen two or more people commit a criminal act and are later jointly indicted, they can usually expect to be tried together." *United States v. Dill*, 693 F.2d 1012, 1014 (10th Cir.1982). Dirden's motion to sever was properly denied.

## IV. SUFFICIENCY OF THE EVIDENCE

 Dirden's final contention is that the evidence at trial was insufficient to sustain

---

**13.** Dirden claims that he would have called Lewis, Lavert Young, and Peggy Rogers (Lewis's mother-in-law) had the trials been severed and that their testimony would have been helpful to his case. As to Rogers and Young, we note the obvious: Dirden was free to call these witnesses and simply chose not to.

As to Lewis, the following seven factors are relevant in considering whether Dirden's motion to sever based on potential exculpatory testimony should have been granted: (1) the likelihood that Lewis would in fact have testified and waived his Fifth Amendment privilege *at the severed trial;* (2) the significance of Lewis's testimony to Dirden's defense theory; (3) the exculpatory nature and effect of such testimony; (4) the likelihood that the testimony would have been impeached; (5) the amount of prejudice caused by the absence of such testimony; (6) the effect of the severance on judicial economy; and (7) the timeliness of the motion. *United States v. Powell*, 982 F.2d 1422, 1432–33 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993). There is nothing before us to suggest that Lewis would have testified, that his testimony, if given, would have been helpful in Dirden's defense against the aiding and abetting charges, or that his testimony would have been in any way exculpatory. Moreover, any prejudice to Dirden caused by the denial of severance was de minimis and greatly outweighed by the expense and administrative inconvenience of conducting two trials. There is no basis for concluding that the trial court abused its discretion in denying Dirden's motion to sever. *See United States v. McConnell*, 749 F.2d 1441, 1445–46 (10th Cir.1984).

the jury verdict rendered against him. In considering a challenge to the sufficiency of the evidence, we review the entire record in the light most favorable to the government to determine whether the evidence is such that a reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Davis*, 1 F.3d 1014, 1017 (10th Cir.1993). We consider both direct and circumstantial evidence, as well as reasonable inferences drawn from that evidence. *Id.* Furthermore, we accept the jury's resolution of conflicting evidence and its assessment of the credibility of witnesses. *Id.; United States v. Youngpeter*, 986 F.2d 349, 352 (10th Cir.1993).

■ Dirden argues that the government adduced no evidence to show that the gun or the controlled substance belonged to him, and that he simply was found guilty by association. He further claims that the jury wholly discounted his testimony and instead relied on circumstantial and uncorroborated evidence.

■ Dirden's argument that no evidence was introduced showing his ownership of the drugs or the firearm misses the point. Whether or not he had a proprietary interest in these items is irrelevant. Dirden was charged with aiding and abetting. Thus, the government was required to prove that Dirden wilfully associated himself with a criminal venture—possession of crack cocaine with intent to distribute and the carrying and using of a firearm during a drug trafficking crime—and that he sought to make the venture succeed through some action on his part. *See United States v. Esparsen*, 930 F.2d 1461, 1470 (10th Cir.1991), *cert. denied,* ── U.S. ──, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992).

In this case, overwhelming evidence was introduced at trial that Dirden aided and abetted in the possession of cocaine base with intent to distribute. The jury heard testimony and saw evidence relating to the narcotics that were found in the vehicle. The videotape of the stop, the seized narcotics, the scales, and the communication devices all were introduced into evidence. Additionally, the jury heard testimony from the arresting officer, narcotics officers, and a state criminalist. Expert testimony was adduced that the quantity of narcotics seized would have been for distribution rather than personal use.[14] Based upon this evidence, a reasonable jury could have found Dirden guilty beyond a reasonable doubt of aiding and abetting in the possession of cocaine base with the intent to distribute.

Similarly, considerable evidence was introduced that Dirden aided and abetted the carrying and using of a firearm during a drug trafficking crime. The firearm was introduced into evidence; Deputy Barney testified that he removed the firearm from beneath the armrest in the front seat of the vehicle; and, while Dirden testified that he had ridden for approximately ten hours in the automobile without noticing a loaded .38 caliber revolver no more than six inches from him, the jury was free to disbelieve his testimony, as it obviously did.[15]

We have reviewed the record in the light most favorable to the government, giving weight to the jury's resolution of conflicting testimony and its credibility determinations. We hold that a reasonable jury could have found Dirden guilty beyond a reasonable doubt on both counts and we reject his argument that the evidence was insufficient to sustain the verdict.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

14. At trial, the government presented expert testimony that the value of crack cocaine ranges anywhere from $500 to $2000 per ounce and that 426 grams (approximately 15 ounces), together with the scales, was indicative of an amount for distribution. R. Vol. II at 70, 78–79.

15. We have held that when a firearm is carried in a vehicle and the defendant knows it is there, the "carrying" element of 18 U.S.C. § 924(c) is satisfied. *United States v. Cardenas*, 864 F.2d 1528, 1533 (10th Cir.), *cert. denied*, 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989). From the evidence presented, the jury reasonably could have concluded that Dirden knew the firearm was in the vehicle.