

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37937-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN JIRO DEROULET, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — John Deroulet was charged with second degree assault on January 30, 2020, but was not tried for 12½ months, due in part to the global Coronavirus Disease 2019 (COVID-19) pandemic. He assigns error to an alleged violation of his constitutional speedy trial right and to the trial court's authorization of a bench warrant for a failure to appear that Mr. Deroulet attributes to a misleading emergency order.

His speedy trial right was not violated and any error in authorizing the bench warrant is unpreserved. We affirm.

No. 37937-0-III
*State v. Deroulet*


PROCEDURAL OVERVIEW

Our legal analysis of constitutional speedy trial violations sometimes entails a continuance-by-continuance examination of the delays. It does in this case. Rather than take the reader through the chronology twice, we introduce the opinion with an overview and defer most of the factual detail to our analysis.

*2020*

On January 30, 2020, the State charged Mr. Deroulet with a second degree assault allegedly committed a couple of days earlier. He was arraigned on February 11 and the trial court set his trial for May 4. He awaited trial out of custody.

On March 16, after state, county and city declarations of a state of emergency due to COVID-19 having become a pandemic, and pursuant to an emergency authorization from the Washington State Supreme Court, the Spokane County Superior Court entered the first of over a dozen emergency orders it would enter before Mr. Deroulet's trial in February 2021. The orders adopted protocols and modified and suspended court rules as warranted to address the public health crisis.[1]

In the ensuing months, Mr. Deroulet's trial was continued nine times. Five of those continuances were over Mr. Deroulet's objection.

---

[1] They included categorical findings that the serious danger posed by the virus for certain time frames constituted an unavoidable circumstance that was good cause for continuing criminal trials under CrR 3.3(e)(3). These and similar administrative orders by the Supreme Court avoided what could otherwise have been many challenges under the time for trial rule, including in this case.

2

On one of the scheduled trial dates—November 30—Mr. Deroulet and his lawyer failed to appear. He attributes their failure to appear to a November 20 emergency order stating that "[a]ll criminal jury trials scheduled to begin November 23, 2020 through December 11, 2020 shall be continued until December 14, 2020." Clerk's Papers (CP) at 38. The court did not intend the order to be self-executing, however. Mr. Deroulet's lawyer was so notified before the November 30 trial date yet no continuance was entered before he and Mr. Deroulet failed to appear. The prosecutor was present when the case was called and, while the trial court authorized a bench warrant at the prosecutor's request, no bench warrant was issued and the failure to appear was resolved by an agreed continuance order presented the next day. Nonetheless, on December 29, Mr. Deroulet filed a notice for discretionary review of the order authorizing the bench warrant.

*2021*

Mr. Deroulet's prosecution proceeded to a jury trial on February 16 or 18.[2] The jury found him guilty of only a lesser-included charge of fourth degree assault, with domestic violence. At his sentencing on March 17, the sentencing court imposed a suspended sentence of one day's confinement with credit for a day served, 363 days suspended, and 12 months' unsupervised probation.

March 17 was also the date on which Mr. Deroulet's motion for discretionary review of the order authorizing a bench warrant was set for hearing. Our commissioner

---

[2] The parties disagree on the date and it is not disclosed in the record.

was informed by the parties that a judgment and sentence had been entered that morning.

Comm'r's Ruling, *State v. Deroulet*, No. 37937-0-III at 2 (Wash. Ct. App. Mar. 19, 2021)

(available from the court). Our commissioner ruled that with entry of the judgment and

sentence, Mr. Deroulet's challenge was reviewable as a matter of right and his motion

would be treated as a notice of appeal. *Id.* at 2. In April 2021, Mr. Deroulet timely

amended his notice of appeal to seek review of his judgment and sentence.

ANALYSIS

Mr. Deroulet makes two assignments of error. We first address an alleged

violation of his constitutional right to a speedy trial and then turn to his challenge to the

bench warrant authorized in November 2020.

I.      MR. DEROULET DOES NOT DEMONSTRATE A VIOLATION OF HIS CONSTITUTIONAL
        SPEEDY TRIAL RIGHT

The Sixth Amendment to the United States Constitution and article I, section 22 of

the Washington State Constitution both protect a criminal defendant's right to a speedy

trial. The analysis of the rights they provide is substantially the same. *State v. Ollivier*,

178 Wn.2d 813, 826, 312 P.3d 1 (2013). The right to a speedy trial attaches when a

charge is filed or an arrest is made, whichever occurs first. *State v. Lee*, 188 Wn.2d 473,

498, 396 P.3d 316 (2017); *State v. Shemesh*, 187 Wn. App. 136, 144, 347 P.3d 1096

(2015). If a defendant's constitutional right to a speedy trial is violated, the remedy is dismissal of the charges with prejudice. *State v. Iniguez*, 167 Wn.2d 273, 282, 217 P.3d 768 (2009).

Like the Sixth Amendment speedy trial right, the state right is consistent with delays and subject to the circumstances. *Ollivier*, 178 Wn.2d at 826 (citing *Barker v. Wingo*, 407 U.S. 514, 522, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972)). We use the balancing test set out by the United States Supreme Court in *Barker* to determine whether a constitutional violation has occurred. *Id.* at 827. That test recognizes the relevance of four separate inquiries: whether delay before trial was uncommonly long; whether the government or the criminal defendant is more to blame for that delay; whether, in due course, the defendant asserted the right to a speedy trial; and whether the defendant suffered prejudice as the delay's result. *Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992) (citing *Barker*, 407 U.S. at 530).

The first of the inquiries is actually a double inquiry: initially, to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial "has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Id.* at 651-52. "[B]y definition, [the defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Id.* at 652. A finding of presumptively prejudicial delay does not mean that

the right to a speedy trial has been violated but rather that the delay is sufficient to trigger

the four-factor *Barker* analysis. *Ollivier*, 178 Wn.2d at 828.

> A.   We find the 12½ month delay presumptively prejudicial, declining the
> State's suggestion to modify the analysis for COVID-19

There is no specific time period that triggers the presumption of prejudice.

*Iniguez*, 167 Wn.2d at 283. Rather, the court should conduct a "fact-specific inquiry

dependent on the circumstances of each case." *Id.* at 291. These circumstances include

the duration of pretrial custody, the complexity of the charge, and the extent to which a

case relies on eyewitness testimony. *Id.* at 292.

Notwithstanding the importance of the circumstances of a particular case, lower

courts have also tried to settle on some time period after which, as a general matter, it

makes sense to inquire why the defendant was not tried more promptly. 5 W. LAFAVE,

ET AL., CRIMINAL PROCEDURE § 18.2(b), at 130 (4th ed. 2015). Many courts have settled

on a time approaching one year. *Id.*; *see also* 12 ROYCE A. FERGUSON, WASHINGTON

PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 1204, at 253 (3d ed. 2004).

The delay between charging and the trial in this case was approximately 12½

months. (Our record does not reveal a date of arrest.) Citing *Furlow v. United States*,

644 F.2d 764 (9th Cir. 1981), the State suggests that in deciding whether the delay is

presumptively prejudicial, we can reasonably attribute 4½ months of the delay to the

pandemic and recognize the remaining 8 months as an ordinary time to trial for a charge

of second degree assault.  Br. of Resp't at 25.  In *Furlow*, a defendant's federal trial was delayed by a month when Mt. St. Helens erupted 2 days before the scheduled date for his Eastern District of Washington trial.  The Ninth Circuit upheld the trial court's ends-of-justice continuance under the Speedy Trial Act, 18 U.S.C. § 3161.

In applying a *Barker* analysis to this constitutional challenge, the pandemic as a reason for delay will necessarily be considered in the analysis of the second *Barker* factor.  We decline to elevate its importance by pulling it into the threshold review of presumptive prejudice.

The circumstances relevant to the "presumptively prejudicial" trigger are the length of delay and time spent in custody, the complexity of the charges, and the extent to which the case relies on eyewitness testimony.  *Shemesh*, 187 Wn. App. at 145 (citing *Iniguez*, 167 Wn.2d at 292).  Mr. Deroulet asserts that the Washington threshold for presumptive prejudice is "typically triggered at eight months" when the charges are not complex, Defendant-Appellant's Opening Br. at 7, but the cases he cites do not support that.  *See Ollivier*, 178 Wn.2d at 828 (citing *Doggett*, 505 U.S. at 652 n.1 (for the proposition that "lower courts had in general found presumptively prejudicial delay at least at the point at which it approaches one year"); *Iniguez*, 167 Wn.2d at 292 (explicitly rejecting the Court of Appeal's "formulaic presumption of prejudice" upon the passing of eight months, but attaching importance to the fact that Iniguez spent the entire period in custody)).

Turning to the relevant circumstances, Mr. Deroulet was out of custody while awaiting trial. We do not have a trial transcript from which to determine the complexity of the second degree assault charge or the importance of eyewitness testimony, but the parties' arguments when continuances were granted provide insight. The party requesting a continuance never did so on the basis of case complexity. It is clear from the arguments when continuances were requested that an eyewitness's testimony could be important, but Mr. Deroulet never expressed a concern that the eyewitness's memory would fade.

Considering all, a 12½ month delay in a simple second degree assault prosecution, involving eyewitness testimony and a defendant out of custody presents a borderline case of presumptive prejudice.

B.     Analysis of the four *Barker* factors

*Length of the Delay*

The first *Barker* factor, the length of the delay, examines "the extent to which the delay stretches beyond the bare minimum needed to trigger" the full four-factor inquiry. *Doggett*, 505 U.S. at 652. A longer delay spurs a closer examination into the circumstances surrounding the delay. *Iniguez*, 167 Wn.2d at 293. Having found this case

to present only a borderline trigger, the delay meets but does not exceed the minimum

needed to trigger our inquiry. This factor does not weigh in Mr. Deroulet's favor.

*Reason for Delay*

The second factor calls upon us to examine each party's level of responsibility for

a delay, and to assign weight to the reasons. *Id.* at 294.

Mr. Deroulet baldly asserts that "[n]one of the continuances . . . were due to Mr.

Deroulet or his counsel," Defendant-Appellant's Opening Br. at 9, but his spare analysis

of this second factor pays no heed to how case law assigns responsibility and apportions

weight. As *Ollivier* explains:

> At one end of the spectrum is the situation where the defendant requests or agrees to the delay and therefore "is deemed to have waived his speedy trial rights as long as the waiver is knowing and voluntary." *Iniguez*, 167 Wn.2d at 284 (citing *Barker*, 407 U.S. at 529). At the other end of the spectrum, if the government deliberately delays the trial to frustrate the defense, this conduct will be weighted heavily against the State. *Barker*, 407 U.S. at 531. Moving more toward the center, if the delay is due to the government's negligence or overcrowded courts, the delay is still weighted against the government but to a lesser extent. *Id.* But if the government has a valid reason for the delay, such as a missing witness, then the valid reason may justify a reasonable delay. *Id.*

178 Wn.2d at 831-32.

There were nine continuances that we examine for their relative impact and to

allocate responsibility.

First continuance: agreed scheduling order entered April 16, 2020

On April 16, 2020, the parties entered an agreed scheduling order that continued Mr. Deroulet's trial to July 6, 2020. The reason for the continuance was "COVID-19 and witness interviews delayed due to stay home order." CP at 7. Mr. Deroulet signed the order, signifying his approval.

Mr. Deroulet disclaims any responsibility for this continuance, attributing it to COVID-19. But that is not how "reason for delay" for speedy trial purposes is analyzed. As observed in *Ollivier*, when a defendant knowingly and voluntarily agrees to a delay, he is deemed to have waived his speedy trial right.

This 63-day delay in the trial date, from May 4 to July 6, was the result of waiver.

Second continuance: unagreed scheduling order entered June 22, 2020

On June 22, 2020, the court continued the trial to July 13, 2020, over Mr. Deroulet's objection. A prosecutor notified the court at the readiness hearing for the July 6 trial that the deputy prosecutor assigned to the case was on medical leave through the trial date. The court granted the continuance, finding good cause because the prosecutor was on medical leave and no prejudice would result.

This 7-day delay, from July 6 to July 13, was at the request of the State, found by the court to be for good cause. (*Running total: Waiver, 63 days; State request/prosecutor unavailability: 7 days*.)

Third continuance: unagreed scheduling order entered on July 9, 2020

On July 9, 2020, the court continued the trial to August 17, 2020, over Mr. Deroulet's objection. The State had requested the continuance on the basis that two material witnesses were unavailable the week of trial and the assigned prosecutor would be unavailable Wednesday and Thursday of that week. The State did not demonstrate that the witnesses were material, however, and defense counsel argued they were not. Since support for the witnesses' materiality was lacking, the trial court found that only the prosecutor's unavailability was shown to be good cause for a continuance.

This 35-day delay, from July 13 to August 17, was at the request of the State found by the court to be for good cause. (*Running total: Waiver, 63 days; State request/prosecutor unavailability: 42 days.*)

Fourth continuance: agreed scheduling order entered on August 13, 2020

On August 13, 2020, the parties entered an agreed scheduling order continuing trial to September 28, 2020, and setting a CrR 3.5 hearing and motions hearing for September 24. The trial was continued after defense counsel objected that a State in limine motion was filed too late, and the court addressed the objection by affording defense counsel more time to respond.

Being agreed, this 42-day delay, from August 17 to September 28, was the result of waiver. (*Running total: Waiver, 105 days; State request/prosecutor unavailability: 42 days.*)

<u>Fifth continuance: agreed scheduling order entered on September 28, 2020</u>

On the Friday before the Monday, September 28 trial date,[3] the parties were informed that their trial would commence on Wednesday, September 30, instead. Defense counsel moved for a continuance, explaining that he had a conflicting hearing in Grant County that day, for an out-of-state client, which he had been unable to change. The State did not object, and the trial court found good cause and continued the trial to November 2.

Mr. Deroulet contends the State bears responsibility for this delay, because his lawyer would have been able to try the case if it had started on Monday. He characterizes moving the trial date to Wednesday as "Court mismanagement." Defendant-Appellant's Opening Br. at 9. As the trial court pointed out at the hearing on Mr. Deroulet's continuance motion, however, it is "common knowledge" that while trials are set for Mondays, the parties are in an on-call posture for trial during the week. Report of Proceedings (RP) (Sept. 28, 2020) at 4. The court also observed that the parties' own joint trial management report had predicted a three-and-a-half-day trial. *Id.* at 5. Mr. Deroulet cites no authority that supports his argument that this is mismanagement chargeable to the State.

---

[3] A State motion to continue trial that had been filed on September 23, 2020, was opposed by Mr. Deroulet, and had been denied by the trial court on September 24.

This 35-day delay, from September 28 to November 2, was at the request of the defense found by the court to be good cause. (*Running total: Waiver, 105 days; State request/prosecutor unavailability: 42 days; Defense request/defense counsel unavailability: 35 days.*)

Sixth continuance: unagreed scheduling order entered on October 29, 2020

An unagreed scheduling order was entered on October 29, 2020, in response to the State's motion representing that the assigned prosecutor needed to urgently travel out of state to deal with her father's discharge from a hospital after having a stroke. The trial court found good cause, including that the time was too short to reassign the case for a November 2 trial. It continued the trial to November 30, 2020.

This 28-day delay, from November 2 to November 30, was at the request of the State found by the court to be good cause. (*Running total: Waiver: 105 days; State request/prosecutor unavailability: 70 days; Defense request/defense counsel unavailability: 35 days.*)

Seventh continuance: agreed scheduling order entered on December 1, 2020

On November 15, 2020, Governor Jay Inslee imposed new restrictions on social contact, explaining that "from the latter part of October through the first two weeks of November 2020, COVID-19 related hospitalizations have risen sharply, putting our people, our health system, and our economy in as dangerous a position as we faced in March 2020." CP at 45. The Spokane County Superior Court emergency order entered

13

on November 20 found that serious danger then posed by COVID-19 constituted good cause to continue criminal jury trials and ordered that "[a]ll criminal jury trials scheduled to begin November 23, 2020 through December 11, 2020 shall be continued until December 14, 2020." CP at 38. An agreed scheduling order was entered on December 1, 2020, that continued trial to December 14.

This 14-day delay, from November 30 to December 14, was agreed, based on the danger presented by the COVID-19 pandemic. (*Running total: Waiver: 119 days; State request/prosecutor unavailability: 70 days; Defense request/defense counsel unavailability: 35 days.*)

Eighth continuance: unagreed scheduling order entered on December 14, 2020

On December 14, 2020, the court ordered the trial continued to January 11, 2021, over Mr. Deroulet's objection. The reason identified was "COVID-19 – trial suspended through [January 11,] 2021." CP at 42.

This 28-day delay, from December 14, 2020 to January 11, 2021, was court-ordered, based on the danger presented by the COVID-19 pandemic. (*Running total: Waiver: 119 days; State request/prosecutor unavailability: 70 days; Defense request/defense counsel unavailability: 35 days; Court-ordered pandemic measure: 28 days.*)

14

Ninth continuance: unagreed scheduling order entered on January 11, 2021

On January 11, 2021, the court continued the trial to February 16, 2021, over Mr. Deroulet's objection, citing as the reason the court's emergency order #14. That order, as amended on January 8, 2021, noted Spokane County's high positivity rate for COVID-19 and the number of hospitalizations, and found it was not reasonably feasible or safe to require jurors, litigants and other participants to travel to the court and congregate in indoor facilities. It ordered that "[a]ll in-person criminal jury trials are hereby suspended until February 16, 2021." CP at 47.

This 36-day delay, from January 11 to February 16, was court-ordered, based on the danger presented by the COVID-19 pandemic. (*Running total: Waiver: 119 days; State request/prosecutor unavailability: 70 days; Defense request/defense counsel unavailability: 35 days; Court-ordered pandemic measure: 64 days.*)

In total, Mr. Deroulet's agreement to, or motions for continuances accounted for 119 days of the delay, with 77 of those days being his agreement to continuances necessitated by COVID-19. Another 64 days' worth of delay was court-ordered because of the pandemic. Only 70 days of the delay was the result of State continuance requests due to prosecutor unavailability. Mr. Deroulet makes no showing that the continuances ordered due to prosecutor unavailability were the result of State negligence, let alone any deliberate delay to frustrate the defense. This factor does not weigh in Mr. Deroulet's favor.

*Assertion of Right*

The third factor, the defendant's assertion of his speedy trial right, is "objectively examined in light of the defendant's other conduct." *Iniguez*, 167 Wn.2d at 284. This factor examines both the frequency and the force of a defendant's objections to further delay. *Id.* at 295.

Mr. Deroulet opposed a slight majority of the delays: five of nine. When he opposed delays he did so clearly, asserting his speedy trial right.

Two of his objections were to continuances mandated by emergency orders that he has not shown to be unreasonable, however. While those are objective proof of his position, the court had no reasonable ability to accommodate his desire to proceed with trial. They do not merit as much weight as the three objections raised when the court was exercising discretion.

This factor favors Mr. Deroulet, but not strongly.

*Prejudice to Defendant*

The final factor reviews the extent to which the delay prejudiced the defendant. "Prejudice may consist of oppressive pretrial incarceration, anxiety, and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *Shemesh*, 187 Wn. App. at 147; *see Barker*, 407 U.S. at 532. If the delay has not been extreme (more than five years), prejudice is

16

not presumed and the defendant must present specific evidence of prejudice. *Ollivier*,

178 Wn.2d at 842-44.[4]

The prejudice claimed by Mr. Deroulet is that he suffered "the loss of multiple job

opportunities in his professional career due to having a pending felony," "near constant

uncertainty as to his life and freedom," and "most egregious[ly]," the fact that a failure to

appear is on his record. Defendant-Appellant's Opening Br. at 10.

He presents nothing more than a bare assertion that he lost multiple job

opportunities. If he ever presented evidence or argument in the trial court that he lost a

job opportunity, he has not made it a part of the record on appeal.

The fact that he has a failure to appear on his record is not "prejudice . . . *as a

result of the delay*" in his trial. *Iniguez*, 167 Wn.2d at 284 (emphasis added) (citing

*Barker*, 407 U.S. at 532). Prejudice as the fourth *Barker* factor "is judged by looking at

the effect on the interests protected by the right to a speedy trial," *id.* at 295, and freedom

from appearing in court as required is not one of the interests protected by the right to a

speedy trial. If having a failure to appear on Mr. Deroulet's record is prejudicial at all,

the prejudice is the proximate result of his failure to appear, not the delay in his trial.

---

[4] As explained in *Ollivier*, "The presumption of prejudice referred to in connection with the fourth *Barker* factor is prejudice that does not require that the defendant show actual prejudice to his defense. It is to be distinguished from the threshold presumption of prejudice that triggers the *Barker* analysis." 178 Wn.2d at 840 n.10.

Finally, as for "uncertainty as to his life and freedom," courts recognize that "[a]nxiety and concern are often experienced by defendants awaiting trial," so the focus is on whether there is some special harm suffered that distinguishes a defendant's case. *Ollivier*, 178 Wn.2d at 845 (citing *United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994)). Mr. Deroulet does not demonstrate any special anxiety or concern.[5]

At most, Mr. Deroulet demonstrates that more often than not he objected to trial continuances based on his speedy trial right. This is easily outweighed where he fails to demonstrate actual prejudice or that any delay was caused by negligent or intentional conduct of the prosecution. Even with the 4½ months of delay caused by the pandemic, the 12½ months to trial was only a borderline trigger for examining the *Barker* factors. Balancing the factors, Mr. Deroulet falls far short of demonstrating a speedy trial violation.

II.     THE CHALLENGE TO THE COURT'S AUTHORIZATION IS NOT PRESERVED

Mr. Deroulet's remaining assignment of error is to the trial court's order authorizing a bench warrant.

The sixth continuance order, rescheduling what had been a November 2, 2020 trial date for November 30, 2020, prominently stated in bold-faced type, "DEFENDANT IS REQUIRED TO APPEAR FOR ALL SCHEDULED HEARINGS OR A WARRANT

---

[5] Our commissioner denied Mr. Deroulet's motion to supplement the record with additional evidence attesting to his particular hardship. *See* Comm'r's Ruling, *State v. Deroulet*, No. 37937-0-III, at 3-4 (Wash. Ct. App. May 19, 2021) (on file with court).

FOR ARREST MAY BE ISSUED." CP at 36 (boldface omitted). Every prior continuance order had included a similar, prominent warning, and Mr. Deroulet had heeded the warnings in the past.

The superior court's emergency order entered on November 20, 2020, included the statement that "[a]ll criminal jury trials scheduled to begin November 23, 2020 through December 11, 2020 shall be continued until December 14, 2020," which a layperson in particular might have read as self-executing. CP at 38. But on the morning of November 24, the criminal court coordinator sent electronic mail to Mr. Deroulet's lawyer (and dozens of other lawyers) with the subject line, "11/30 Trial Docket," which stated in relevant part:

> If your case is on the 11/30 trial docket, you will need to get an order in moving the trial date to at least 12/14. The court is not doing orders moving dates.

CP at 59.

A transcript of the November 30 docket call reveals that after Mr. Deroulet's case was called twice, the prosecutor informed the court that she had attempted to reach out to Mr. Deroulet's lawyer by e-mail, "indicating . . . we needed to move this case given the new COVID orders, and I was unsuccessful." RP (June 22, 2020) at 18. She added that "[g]enerally, Mr. Deroulet has appeared at every single hearing," but given his and his lawyer's absence, she requested "authorization for a bench warrant to reset the clock" and would reach out to defense counsel to let him know. *Id.* The court observed, "The only

19

thing that we've suspended is jury trials," and "[a]ll the other hearings are still taking place." *Id.* Noting that Mr. Deroulet should have appeared, the court stated it "will authorize a warrant but not issue a warrant. Hopefully you can get ahold of his attorney and get this matter reset." *Id.* The court signed an order authorizing a bench warrant. A scheduling order setting trial for December 14 was presented and entered the next day.

Mr. Deroulet did not seek relief in the trial court from the order authorizing a bench warrant. RAP 2.5(a) states the general rule for appellate disposition of issues not raised in the trial court: "appellate courts will not entertain them." *State v. Guzman Nunez*, 160 Wn. App. 150, 157, 248 P.3d 103 (2011) (citing *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988)), *aff'd*, 174 Wn.2d 707, 285 P.3d 21 (2012). The principle of error preservation is firmly rooted and serves important goals of judicial economy by allowing the trial courts to correct mistakes as they arise and ensure that a complete record of the issues will be available. *State v. Strine*, 176 Wn.2d 742, 749-50, 293 P.3d 1117 (2013). Mr. Deroulet does not argue that an exception to RAP 2.5(a)'s general rule applies.

He does assert, in connection with the speedy trial issue, that if he is charged with an offense in the future, the November 30, 2020 order will cause his release conditions to be more severe. Defendant-Appellant's Opening Br. at 10. The State responds that a single failure to appear would be "unremarkable" to a court considering whether to release a defendant on his own recognizance. Br. of Resp't at 32. We decline to join in

20

the parties' speculation, but note that if Mr. Deroulet finds himself having to explain the November 30 order, he can point to our documentation with this opinion that his failure to appear was isolated and arguably the result of an innocent misunderstanding of the November 20 emergency order.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____
Lawrence-Berrey, J.

_____
Ekstrom, J.P.T.

21